# Yniestra *v.* Tarleton *et al.*

### *Bill in Equity to Establish and Enforce Implied Trust.*

1. *Non-claim, statute of ; exceptions in statute of limitations as to fraud, do not refer to.*—Tho provisions of § 3242 of the Code, that ''an action may be brought at any time within one year from the discovery, by the aggrieved party, of the facts constituting the fraud," do not refer to the statute of non-claim.

2. *Same ; claims originated by fraud of deceased, barred by.*—A claim against the estate of a deceased person, originating in, or based on, his fraud or fraudulent concealment of the cause of action, is barred by the statute of non-claim, unless it is presented to his personal representative or filed in the office of the judge of probate, of the proper county, within eighteen months after the grant of letters testamentary or of administration.

3. *Same ; demurrer to bill on ground of, when properly sustained.*—When a bill filed to enforce a claim against the estate of a deceased person, which it is alleged arose from a cause of action fraudulently concealed by him, shows on its face that such claim was not presented to the personal representative of his estate, nor filed in the office of the judge of probate, of the proper county, within eighteen months after the grant of letters testamentary or of administration, a demurrer on the ground that such claim is barred by the statute of non-claim, is properly sustained.

APPEAL from Mobile Chancery Court.

Heard before Hon. JOHN A. FOSTER.

This was a bill filed by Louisa Yniestra, on January 15, 1880, against Robert Tarleton and others, who were the heirs and devisees of Geo. W. Tarleton, deceased. The complainant alleged that she was married to B. F. Yniestra in Nov. 1857 ; that before her marriage she was seized and possessed of a lot of land in the city of Mobile, which is described in the bill, and on which there was a brick store-house ; that she had derived this property from the estate of her father, and that after her marriage it became her statutory separate estate; that about the first of March, 1863, her husband borrowed from Geo. W. Tarleton, $5,000 for the use of the mercantile firm of which he was a member ; that, at her husband's request, she signed a note on said day for $5,000, payable to Geo. W. Tarleton, and due March 1st, 1869, and also a mortgage on the said lot to secure its payment ; that complainant was never indebted to said Tarleton, and never borrowed any money from him ; that her husband, who had control of the property as her trustee, caused the store to be insured in the Ætna Ins. Co. for $3,000, and caused the policy to be issued to him as "agent"; that while said policy was in force, namely, about the 11th of March, 1868, her husband trans-

ferred the policy to G. W. Tarleton, and on each subsequent yearly renewal thereof, also assigned it to said Tarleton; that her husband always paid the premiums on the policy, and that he had always ample funds coming from her statutory separate estate, with which to do so; that about the 9th of December, 1870, the buildings on said lot were wholly destroyed by fire; that proper proofs were made, and the loss adjusted, and the whole amount of the policy, viz: $3,000, was, without opposition from her husband, paid by the insurance company in March, 1871, to said Tarleton; that the proceeds of said insurance was the corpus of her statutory separate estate, and was paid to said Tarleton upon the assignment of the policy made to him by her husband; that said Tarleton had express notice from the public records of Mobile county, from the terms of the policy, and from his personal knowledge of the facts, that the policy was issued to B. F. Yniestra, as her agent, and on the property belonging to complainant; that all the foregoing facts were concealed from her by her husband, and by Geo. W. Tarleton, and that she learned them in the following manner: After the improvements on the lot were destroyed, and after the insurance money had been collected, without her knowledge, by G. W. Tarleton, she, in 1873, endeavored to sell the lot, but discovered that there was a mortgage on the lot, on record, in favor of said Tarleton, and then first discovered the true character of the instrument signed by her, in March, 1868. She then filed a bill on March 30, 1873, against her husband and G. W. Tarleton, in which she alleged the character of her estate in the lot, the origin of the debt, and the fact that she assumed it in ignorance of her rights, and the consequent nullity of the note and mortgage; but Geo. W. Tarleton, though duly summoned, did not appear and answer the bill, but permitted a decree *pro confesso* to go against him, and made no disclosure of the fact that two years before he had collected the insurance money, but purposely concealed this fact; and the bill then avers that in making such collection he was acting as her trustee, and had no right to apply the money in payment of her husband's debt to him; that the Chancery Court decreed the mortgage to be void, and directed it to be canceled. To all of which said Tarleton tacitly consented, designing to induce complainant to believe that he had abandoned any claim on her property, when he had already appropriated said insurance money; that the assignment of the policy was a nullity; that said Tarleton persisted in concealing the fact of the collection of the insurance policy until his death in May, 1874. The bill avers that complainant's husband had full control and manage-

ment of her property till his death, which occurred in July, 1879 ; that 60 days before the filing of the bill, she discovered the facts from her attorney during the course of a consultation on other matters. The names of the devisees and legatees of G. W. Tarleton are then given, with their respective interest in the property left by him, and the bill prays that the insurance money collected by him, as aforesaid, may be declared a trust-fund; that a charge and lien may be declared on the whole estate of said G. W. Tarleton, remaining in the hands of the defendants, devisees under his will, and that the sum embraced in said trust fund be decreed to be paid to her out of the portions of said property that have come to the hands of said defendants.

The defendants answered, denying the material averments of the bill, and also interposed a demurrer on the ground that the claim which was sought to be enforced by the bill was barred by the statute of non-claim.

The Chancellor sustained the demurrer and dismissed the bill. This decree is assigned as error.

HANNIS TAYLOR, for appellant.

OVERALL & BESTOR, for appellee.

SOMERVILLE, J.—The pleadings, and ruling of the Chancellor on the demurrer to the bill in this case, raise the question, as to whether or not allegations of *fraud*, or *fraudulent concealment*, of a cause of action, averred in the bill, can operate to take the action out of the statute of *non-claim*. This inquiry has never before been decided by this court.

It is argued by appellant's counsel, that, under the provisions of section 3242 of the Code of 1876, the action can be brought at any time within one year from the discovery by the aggrieved party of the facts constituting the fraud, and that the bill in this case was, for this reason, filed within proper time.

The statute invoked for relief, (§ 3242 of the Code), has no reference to the statute of *non-claim*. It will obviously appear, from its context, that it was intended to apply only to prevent the bar of the statute of *limitations*. At common law, it was doubtful, amid the conflicting decisions, whether the time necessary to complete the bar would commence to run only from the discovery of the fraud, or whether a reasonable time thereafter should be allowed for bringing suit. In this state of the law, "one year" was prescribed by the legislature as the reasonable time within which the aggrieved party was required to prosecute his suit, when his

[Yniestra v. Tarleton et al.]

relief was based on the fraud or fraudulent concealment of the defendant.—*Porter v. Smith,* (MSS., present term.)

The statute of *non-claim,* as found in the present Code, is in the following language : "ALL *claims* against the estate of a deceased·person, must be presented within eighteen months after the same have *accrued,* or within eighteen months after the grant of letters testamentary, or of administration ; and *if not presented within that time are* FOREVER BARRED.—Code, 1876, § 2597.

Section 2599 provides that presentation may be made either to the executor, or administrator, or by filing the claim, or a statement thereof, in the office of the judge of probate, in which letters were granted.

There are no exceptions to the universal operation of this statute, except in favor of minors, and persons of unsound mind, who are allowed eighteen months after the removal of their respective disabilities, and in favor of heirs or legatees, claiming as such.—(Code, § 2598.) "*All* claims" is a phrase clear and comprehensive, and must be construed to mean just what the words import. It does not mean all claims except a class not specified. It fails to make any exception of such claims, as the owner or holder may be ignorant of, or of such as may originate in, or be based on the fraud, or fraudulent concealment of the deceased. The remark of Lord Bacon embodies but a plain rule of construction, recognized every where in the common law, "that, as exceptions strengthen the force of a general law, so enumeration weakens as to things not enumerated." The statute is unambiguous in its language, and plain in its literal meaning, and we do not feel authorized to incorporate in it a new exception, especially of this sweeping magnitude, without the sanction of the legislature.—*Carlisle & Jones v. Godwin,* (MSS., present term.) The following authorities show that, under our decisions and legislation, the statute of *non-claim* has never been regarded merely as a statute of *limitations,* but that the two systems have been recognized as separate and distinct, and embrace scopes of policy not commensurate, but, in many particulars, essentially diverse.—*Fretwell v. McLemore,* 52 Ala. 140 ; *McDowell's Adm'r v. Jones' Adm'r,* 58 Ala. 25 ; *Halfman's Ex'rs v. Ellison,* 51 Ala. 545 ; *Branch Bank v. Donelson,* 12 Ala. 742.

The further fact that the legislature have seen fit to apply section 3242 expressly to the statute of limitations, and have failed to indicate any intention that it shall have application to the statute of *non-claim,* is, to our mind, conclusive of the above view. There are many forcible reasons, derived from the policy and purposes of the latter statute, why, as to it,

(9)

the exceptions should not prevail, and why it was, therefore, omitted with wise deliberation. To attempt to engraft it on the statute upon any principle of analogy would be a species of judicial legislation which we do not feel authorized to adopt.

The Chancellor correctly sustained the demurrer to appellant's bill.

These views render unnecessary the consideration of any other question raised by the record.

Affirmed.