[Jones v. Drewry.]

# Jones *v.* Drewry.

*Bill in Equity by Foreign Creditors, against Devisees and Resident Executor of Deceased Debtor.*

1. *Statute of non-claim; foreign debts.*—The statute of non-claim enacted in 1815, which continued in force until the adoption of the Code of 1852, expressly excepted from its operation "debts contracted out of this. State" (Clay's Digest, 195, § 17); but this exception being entirely omitted from the present statute (Code, §§ 2597–8), the courts have no power to incorporate it.

2. *Administration of assets of deceased debtor; governed by what law.*. As against creditors, seeking to enforce satisfaction of their claims out of the assets of their deceased debtor, the administration of the assets is governed by the law of the place where the personal representative acts, and where he was appointed, without regard to the domicile of the creditor, or of the debtor at the time of his death.

3. *Conclusiveness of judgment or decree.*—A judgment and decree rendered in an administration suit in Virginia, where the deceased debtor died, however conclusive against the widow, heirs and devisees, who were parties to the suit, as to the validity and justness of the claims of creditors which were presented and allowed, can not prevent the operation of the Alabama statute of non-claim, when pleaded by them and the personal representative appointed here, in bar of a suit here instituted to enforce satisfaction of the claims out of lands in Alabama.

APPEAL from the Chancery Court of Montgomery.

Heard before the Hon. H. AUSTILL.

The bill in this case was filed on 14th May, 1878, by James Drewry and others, citizens of Virginia, "in behalf of themselves and all other creditors of James W. Cook, deceased, who are entitled to share in the proceeds of the property of said deceased, sought by this bill to be subjected to sale, and who may come in under the order or decree of the court on such terms as may be prescribed as equitable;" against the widow and children of said decedent, as his heirs at law and devisees under his will, and against Samuel G. Jones as executor, acting under the grant of letters testamentary issued to him by the Probate Court of Lowndes county, Alabama; and sought to enforce satisfaction of the debts due to the complainants respectively, from the said decedent, out of certain lands situated in Montgomery and Lowndes counties, Alabama, which belonged to the decedent at the time of his death, and which were in the possession of the defendants claiming under his will. James W. Cook, the deceased debtor, was a resident and citizen of Virginia at the time of his death; and he there died

[Jones v. Drewry.]

during the year 1864, possessed of a large estate in Virginia, and of two large plantations in Alabama, situated in the counties of Lowndes and Montgomery, with slaves and other personal property. His last will and testament, duly executed according to the laws of Virginia and Alabama, was duly proved and admitted to probate in each of these States. By the terms of the will, three persons were nominated as executors in Virginia, of whom one only, N. P. Young, qualified; and two other persons were nominated as executors in Alabama, both of whom duly qualified, and acted together for a short time, until one of them (Thomas E. Branscombe) resigned, and made a final settlement of his accounts, leaving Samuel G. Jones as the sole acting executor in Alabama. The will directed that the plantations in each State should be kept up and managed by the executors there appointed; that the executors in Alabama should make annual returns to the executors in Virginia, of the profits accruing from the plantations in Alabama; and that all the executors, acting jointly, should allot and set apart to each child, on attaining majority, a proportionate share of the lands and other property.

The bill contained the following allegations: "The said J. W. Cook, at the time of his death, owed a large number of debts in Virginia, which are still unpaid, and amongst others was largely indebted to each of your orators, whose several debts are still unpaid. In the year 1866, the said executor who qualified in Virginia, finding that he was unable to execute the will, filed his original bill in equity in the Circuit Court of Greeneville county, Virginia, for the construction of said will, and the administration of said estate, against the widow, devisees and heirs at law of said Cook; and also against certain creditors of said Cook, who had liens upon a portion of the assets of said estate; and thereupon said court, sitting in equity, took upon itself the administration and settlement of said estate, and, in the exercise of its jurisdiction, audited, allowed, and adjudged many debts to be due and payable out of the real and personal property of said estate,—which judgments are unreversed, and of full force and effect; and a list of said debts so audited and allowed, including those due to your orators, showing the interest and payments thereon up to 1st January, 1874, is hereto attached as a part hereof, marked *Exhibit B*. Upon all of said debts there is a large balance still due and unpaid, and the property of said estate in the State of Virginia is insufficient to pay the said debts there so audited and allowed; and said estate is insolvent, and unable to pay the debts against the same. In said cause in said Circuit Court in Virginia, the several adult defendants were either personally served with process giving notice of said cause, or appeared in

[Jones v. Drewry.]

said cause; and all of the infant defendants were made parties according to the law of Virginia, and appeared, and defended said cause under the direction of said court. Your orators further allege and show, that there are no debts of said estate in Alabama unpaid; that the property of said estate in Alabama consists of two large plantations," particularly describing the lands; "that the assets of said estate in the hands of Samuel G. Jones, other than lands, are of small value and amount; and that it is necessary to sell the said lands for the payment of the debts of said estate, including the debts due to your orators." It was alleged, also, that said Jones, the Alabama executor, "has taken no steps to have said lands sold;" and the Virginia executor was made a defendant to the bill, under an allegation that he refused to join as a complainant. The bill prayed, "that all the property of said estate in Alabama may be sold; that the said Samuel G. Jones make a full settlement of his executorship, and that all of the creditors of said estate be paid *pro rata* out of the funds of said estate under the direction of the court; or that, after paying any and all debts and liabilities of said estate in the State of Alabama, the surplus be transmitted to the executor of said estate in Virginia, to be there administered under the direction of said Circuit Court of Greenville, or otherwise according to law;" and for other and further relief, under the general prayer.

Separate answers were filed by the executor, the widow, the adult heirs, and the guardian *ad litem* of the infant heirs, setting up the statute of non-claim and the statute of limitations by way of pleas; and they also demurred to the bill, because (with other grounds specially assigned) it did not allege or show that the complainants' claims had been presented to the executor in Alabama within eighteen months after the grant of letters testamentary, as required by the statute of non-claim. The chancellor overruled the demurrers and the plea, and held the complainants entitled to relief as prayed; and his decree is now assigned as error by the defendants, jointly and severally.

THOS. G. JONES, for the appellants, relied on the statute of non-claim (Code, § 2597), and contended that foreign debts were not excepted from its operation.

W. A. GUNTER, *contra.*—(1.) The heirs and devisees, being personally liable to the extent of assets descended or devised, might be sued in one jurisdiction, though the assets were in another.—2 Wms. Ex'rs, 1531; *Spackman v. Timbrell*, 8 Sim. 253. Therefore, the litigation with the heirs or devisees in one jurisdiction, and the establishment of the debts by judgment against them there, preclude them from setting up any defense

going behind the judgment, when sued on it in another juris-diction.—*Richardson v. Horton,* 7 Beavan, 123 ; 1 Mac. & G. 449. (2.) By express constitutional provision (Art. IV, § 1), a judgment rendered in one State has equal validity and efficacy in every other State.—U. S. Rev. Stat. § 905. (3.) A general creditors' suit, or an administration suit in which creditors are required to come in and prove their debts, is regarded as a separate suit by each creditor who so comes in, and debts allowed stand as judgments.—*Sterndale v. Hankinson,* 1 Sim. 393 ; *Pearson v. Darrington,* 32 Ala. 275 ; *Steele v. Steele,* 64 Ala. 452 ; 2 Dan. Ch. Pr. 1211, 4th Amer. ed. After decree in such administration suit, which is regarded as in the nature of a judgment for each creditor, creditors will be enjoined from proceeding at law against the debtor's estate. 2 Dan. Ch. Pr. 1615, same edition, and authorities there cited. (4.) The heirs and devisees being concluded by the decree rendered in Virginia, the executor in Alabama should not be allowed to set up, for their benefit, any defense which they are estopped from asserting. The only object of the suit is to subject the lands in Alabama to the payment of the testator's debts, and the executor has no interest whatever in them except for the payment of debts. Where there are executors residing and appointed in different jurisdictions, unlike administrators, a judgment against one is equally conclusive on the others.—*Hill v. Tucker,* 13 Howard, 462 ; *Goodall v. Tucker,* 13 Howard, 469. (5.) The statute of non-claim does not apply to foreign debts. The express exception contained in the former statute was construed to be unnecessary (*Suydam v. Broadnax,* 14 Peters, 74), and was for that reason, doubtless, omitted from the present statute.

BRICKELL, C. J.—The original statute of non-claim, enacted in 1815, and continuing of force until the adoption of the Code of 1852, contained an exception in favor of "debts contracted out of this State," and of the claims of *femmes covert.* Clay's Dig. 195, § 17. In the revision of the statutes of the Code of 1852, these exceptions were omitted, and the only persons excepted from the operation of the bar of the statute were "heirs or legatees claiming as such," and minors or persons of unsound mind, who were allowed eighteen months after the removal of their respective disabilities for the present-ment of their claims.—Code of 1876, §§ 2597-8. The words of the statute are clear, unambiguous, and comprehensive. "All claims against the estate of a deceased person must be presented within eighteen months after the same have accrued, or within eighteen months after the grant of letters testa-

mentary, or of administration; and if not presented within that time, are forever barred."

The construction of the statute has been in harmony with the undoubted significance of its words. Every claim, or demand, existing against the testator or intestate at the time of his death, or subsequently accruing—every legal liability of either character, to which the personal representative can be made to answer, in courts of law or of equity, or which can charge the assets in his hands subject to administration—is regarded as falling within the operation and bar of the statute. *Fretwell v. McLemore*, 52 Ala. 124; *McDowell v. Jones*, 58 Ala. 25. It is the policy of the whole statutory system touching the administration of estates, that they shall be as speedily as practicable settled and distributed. The creditors have the primary right to be satisfied from the assets. But they have not a right to prolong indefinitely the settlement and distribution of the estate, keeping legatees, or next of kin, or heirs, from the enjoyment of such parts of the estate as the law may appoint them to receive. The debts are but charges, or incumbrances upon the estate; and the same justice and sound policy in which statutes of limitation originate may well be supposed to require, that within a limited time they should be presented to the personal representative, that he may proceed safely in the administration, and the legatees, or next of kin, or heirs, may ascertain the extent of their interest, and that it is free from incumbrances.

The legislature having omitted the exception of "debts contracted out of the State" from the bar of the statute, the courts are powerless again to introduce it. The omission is a clear signification of the legislative will that such debts shall fall within the operation of the statute. Independent of this consideration, the rule is well settled, that general words of a statute must receive a general construction, and unless for restraining them there can be found some ground or reason in the statute itself, they are not to be restrained by arbitrary addition or retrenchment. Upon this rule rests the rule which may be said to be inflexible, that no exception to a statute of limitation can be claimed, if it be not expressly mentioned in the statute. *Howell v. Hair*, 15 Ala. 194; *Harwell v. Steele*, 17 Ala. 372; *Binford v. Binford*, 22 Ala. 682; *Yniestra v. Tarleton*, 67 Ala. 126. Whatever may have been true in 1815, when the statute was originally enacted, and within our territorial jurisdiction there were but few citizens who had not recently migrated from other States; there would be, now, but little of reason or of justice in subjecting creditors whose debts were contracted here to the operation of the statute, and relieving creditors whose debts were contracted elsewhere. The cause

in which the exception had its origin passed away, and the legislature deemed it proper the exception should also cease. The cause for excepting married women from the statute was the disability, under which they labored at common law, of asserting and enforcing demands to which they were entitled. The disability was removed by legislation, and the exception of their claims from the operation of the statute was abrogated.

The argument of appellees' counsel is addressed to the proposition, that the statute, of itself, is incapable of application to contracts made without the State; that it is a general statute, without a direct application to such contracts, and, not expressly mentioning them, can not be construed to include them. Such, it is said, is the construction placed upon the former statute by the Supreme Court of the United States, in *Suydam v. Broadnax*, 14 Peters, 67. The single question before the court in that case was, whether the judicial ascertainment of the insolvency of an estate, by the Orphan's Court having jurisdiction, could be pleaded in abatement of a suit subsequently commenced by a creditor, a citizen of New York, in the Circuit Court of the United States; the statute in reference to insolvent estates then of force prohibiting the commencement of such suits after the estate had been represented insolvent. There was no question before the court, touching the construction or operation of the statute of non-claim; it was not even adverted to in the argument of counsel. The only question which the court decided, or could have decided, was, that a statute of the State, abridging the jurisdiction of its courts, could not be applied to the courts of the United States, however general may be its terms. This is apparent from the certificate ordered to the Circuit Court, which simply was, " that the plea that the estate of the deceased is insolvent is not sufficient in law to abate the plaintiff's action." Whatever may be said in the opinion touching the statute of non-claim and its operation, is mere *dicta*.

The established rule of law, as we understand it, is, that in regard to creditors, the administration of the assets of deceased persons is governed exclusively by the law of the place where the executor or administrator acts, and from which he derives authority. The domicile of the intestate or testator, or of the creditor, can not authorize the introduction of another law, to defeat the law of the *situs* of the administration.—Story's Confl. Laws, § 524. The obligation of contracts, wherever made, and whether made with a citizen of the State or of another State, can not be impaired. The citizen of another State can be denied no right, in enforcing his claims, which is granted to the citizen of the State. There can be, in the order of payment, no discrimination because of citizenship, in favor of the claims of

[Jones v. Drewry.]

the one, and against the other. When the obligation of the
contract is not impaired—when the citizens of other States are
placed upon an equality of right with our own citizens—the
law of the State regulating the administration of the assets of
deceased persons must govern, whatever may be the law of the
domicile of the testator or intestate, or of creditors.—*Smith v.
Union Bank*, 5 Peters, 513; *McElmoyle v. Cohen*, 13 Peters,
312. The statute simply requires, that the creditor shall, within
a specified period, do a particular act, to preserve his right to
subject the assets to the payment of his demand. · The failure
to do the act bars the claim from charging or incumbering the
assets. There is no greater reason for the exception of debts
contracted without the State, from the operation of the statute,
than there would be for the exception of such debts from the
statutes of limitation. There is no greater reason for reading
the statute as limited in operation to debts contracted within
the State, or to the debts of our own citizens, wherever they
may have been contracted, than there would be for reading the
statute of limitations as so confined. Neither statute is directed
to the validity or obligation of contracts—each affects only
remedies, and goes " *ad litis ordinationem*, and not *ad litis di-*
*cisionem*, in a just judicial sense."—Story's Con. Laws, § 576.
There could have been but one purpose in the omission from
the statute of "debts contracted out of the State;" and that
purpose is, that the general words of the statute embracing
them should have full operation.

A judgment of a court of law, or a decree of a court of
equity, is conclusive of all the facts actually litigated and de-
cided, and of all facts necessarily involved in the issues of the
suit. It may be, that the decrees rendered in Virginia are con-
clusive, as against the widow and devisees, of the validity and
justness of the demands preferred by the appellees; and of the
same facts, it may be, they are *prima facie* evidence against
the executor resident in this State. The validity, or justness
of the debts, is not the question now involved. The question
is, whether the creditors have done an act which the statute of
this State declares a condition precedent to their right to charge
the assets subject to administration in the courts and under the
laws of this State. The question was not involved, and could
not have been litigated, in the suit in which the decree in Vir-
ginia was rendered. The conclusiveness, or · the estoppel of
judgments or decrees, does not extend to matters which are
drawn in question collaterally, or which were incidentally cogni-
zable in the suit in which they were rendered; and it can not
be extended to estop parties from litigating matters, from mak-
ing defenses, of which the court could not have taken cogni-
zance, and which would not have availed them as to the termi-

[Flexner & Lichten v. Dickerson.]

nation of that suit, if of them the court had taken cognizance.

The statute requires the creditor to do an act within a speci-
fied time, to preserve his claim as a charge or incumbrance upon
the estate of a deceased person.   If the act be not done, what-
ever of justice there may be in his claim, however full may be
the knowledge of the personal representative, or of heirs, or of
legatees, or next of kin, entitled to the secondary right to the
estate, of the existence and justice of the claim, the bar of the
statute can be avoided only by the presentment to the personal
representative,—the act which the statute requires.—*Jones v.
Lightfoot*, 10 Ala. 17; *Boggs v. Br. Bank Mobile, Ib.* 970;
*Bank v. Hawkins*, 12 Ala. 755; *Pipkin v. Hewlett*, 17 Ala.
291; *McDowell v. Jones*, 58 Ala. 25.   The widow and devisees
from the suit in Virginia may have derived full knowledge of
the existence of the claims of the appellees, and may by the
decree rendered in that suit be concluded from disputing their
justness.   The knowledge they acquired, the estoppel of the
decree, can not affect the operation of the statute regulating
the administration of assets here situate, and in our courts can
not open a controversy the statute intended to bar,—the liability
of the assets to be charged with the payment of claims not pre-
sented.

Whether the statute operates a bar to the claim, is the only
question which was argued by counsel, and we confine our de-
cision to it.   In any view which we can take, we are constrained
to the conclusion, it is a positive bar, no court obeying the stat-
ute can disregard.. The result is, the decree of the chancellor
must be reversed, and a decree here rendered, dismissing the
bill at the cost of the appellees.