SAMANTHA KECK, Appellant, v. HOTEL OWNERS MUTUAL FIRE INSURANCE COMPANY, *et al.*, Appellees.

Compromise: CONSIDERATION: ACCEPTANCE: EFFECT. A mutual fire insurance company, having its office in Iowa, sent to a bank in Nebraska a draft for about sixty-seven *per cent.* of a loss payable there, with instructions to deliver the same to the plaintiff upon her signing a receipt that such amount "was in full payment and compromise settlement of all claims and demands" for the loss in question, and that in consideration of such payment the said insurance company was thereby "discharged forever from all further claim by reason of said fire, loss and damage." The insurance company did not claim that the amount of such draft was the full amount of the loss due under said policy, but that as a mutual insurance company it was only bound to pay the share of such loss in the amount collected upon assessments of premium notes, and that said draft represented such sum. The plaintiff on the other hand insisted that the contract of insurance required the company to pay the loss under said policy in full. The plaintiff having indorsed the draft, and left it with the bank for collection, for the purpose of bringing the amount thereof within the jurisdiction of the courts of Nebraska, and subject to an attachment, which she caused to be issued in an action against the defendant on said policy, *held*, that the plaintiff's indorsement of said draft was in effect an acceptance thereof upon the condition under which it was tendered, although the receipt was not signed, and that the liability of the insurance company under said policy was thereby discharged,

*Appeal from the Union District Court.*—HON. W. H. TEDFORD, Judge.

WEDNESDAY, OCTOBER 11, 1893.

ACTION on a policy of fire insurance to recover an amount alleged to be due on account of the destruction of the property insured by fire. There was a trial by the court without the intervention of a jury, and a judgment in favor of the defendant, the Anchor Fire Insurance Company for costs. The plaintiff appeals.— *Affirmed.*

*T. M. Stuart,* for appellant.

*Sullivan & Sullivan,* for appellees.

ROBINSON, C. J.—In December, 1889, the Hotel Owners' Mutual Fire Insurance Company of Creston issued to the plaintiff the policy in suit. It purported to insure her against loss or damages by fire and lightning to the amount of two thousand, five hundred dollars on certain hotel property in the town of Kearney, in the state of Nebraska. Other insurance was permitted and carried. In January, 1890, the name of the company was changed to Anchor Mutual Fire Insurance Company, and it is made the defendant under both the old and the new names. On the twenty-fourth day of March, 1890, while the policy was in force, the property insured was destroyed by fire. Notice of the loss was at once given to the defendant, and proof of loss was duly made, showing that the value of the insured property destroyed was twenty-seven thousand two hundred and fifty dollars, and that the defendant's share of the loss was two thousand four hundred and seventy-seven dollars and twenty-seven cents. On the seventh day of April, 1890, the defendant acknowledged receipt of the proof of loss, and stated that it was not

disposed to dispute its liability under the policy. It also said. "We regret, being a new company, and an assessment company, that we are unable to accept your offer of a discount for the immediate payment in advance of the sixty days' allowance of time. We will endeavor to pay your policy at the expiration of sixty days." On the fourteenth day of June the plaintiff called the attention of the defendant to the fact that the loss had not been paid. Two days later the defendant wrote to plaintiff as follows: "Madam: Your favor of the fourteenth inst. received. Would say, in reply thereto, we are prepared to pay you the amount due you from this company by loss under its policy number 180. Being a mutual company, we regret that at the time of your loss our association had not progressed sufficiently far in its organization, or issued such a number of policies, that receipts from premium collections thereon would enable it to pay your loss in full. We are now ready to remit to you, as per our plan of organization, the amount due you by loss under policy number 180." In answer, on the eighteenth day of June, the plaintiff wrote as follows: "Dear Sir: Yours of the sixteenth to hand, in which you say, 'Would say, in reply thereto, we are prepared to pay you the amount due you from this company by loss under its policy number 180,' and, further, that you are ready to remit. In answer thereto I beg to say that we are still patiently awaiting such payment and remittance, and hope you will do so at once." On the twentieth day of June the defendant sent to the Kearney Savings Bank at Kearney a draft for one thousand six hundred and seventy-one dollars and fifty cents, with a letter in terms as follows: "Gentlemen: Inclosed we hand you draft number 62,565 on First National Bank, Chicago, one thousand six hundred and seventy-one dollars and fifty cents, payable to Samantha Keck. We also hand you receipt to be signed

by Samantha Keck before draft is turned over to her. Please return receipt duly signed by Samantha Keck to us, and oblige." The receipt referred to in the letter was as follows:

"Total Loss. Creston, Iowa, June 20, 1890. Received of the Anchor Mutual Fire Insurance Company, formerly the Hotel Owners' Insurance Company, through George J. Delmege, adjuster of said company, the sum of sixteen hundred and seventy-one and fifty hundredths dollars ($1,671.50), being in full payment and compromise settlement of all claims and demands for loss or damage by fire which occurred on the twenty-fourth day of March, 1890, to the property insured under policy number 180, issued at the home office agency of said company; and in consideration of said payment the said company is hereby discharged forever from all further claim by reason of said fire, loss and damage, and the policy is hereby surrendered and canceled. Net amount paid, sixteen hundred and seventy-one dollars and fifty cents."

On the same day the defendant sent to the plaintiff a letter, as follows: "Madam: We have this day forwarded to Kearney Savings Bank our draft for payment of loss under our policy, number 180, held by you. As you know our company is not fully organized, and under the terms of our articles of incorporation you are entitled to the amount of an assessment on premium notes held by the company at the time of the loss. Please call at the bank, sign receipt, and take up the draft." On the next day plaintiff answered that letter, objecting to taking less from the defendant than its full share of the loss, denying that there had been any compromise as indicated in the receipt, insisting, in effect, upon payment in full, and asking for the reason of the defendant for tendering less than that amount. The closing paragraph of the letter is as follows: "We have not signed the receipt, nor

accepted the draft sent, for the reasons above; nor shall we, until full explanation by you as above requested, and to our satisfaction." In answer to that letter, the defendant on the twenty-third day of June, wrote as follows:

"Your favor of the twenty-first inst., in reference to the amount of check sent you in payment of loss under our policy, number 180, is received. As you understand, this company is a mutual company, and as yet is only in process of organization. The amount it can pay, in event of loss, depends upon the amount of premiums it can collect from its policy holders. We had some heavy losses at other points about the time the Midway Hotel was burned, and we assure you we have made every effort to collect premiums on policies issued to meet these losses. In Nebraska we have been unfortunate in our collections, and, of course, if the parties do not pay their premiums when due, we have no means of forcing them to do so. We beg leave to assure you that in arranging for the payment of loss, under policy number 180, we have exerted ourselves to raise as large a sum as possible, and regret that, being a young mutual company, we are unable to raise the full amount of your loss. We wish to say to you that there is nothing ambiguous in any letter we have written you. We have simply stated to you our facts. Our company is a mutual company, and, as yet, unorganized. In your case we have exhausted every means, and have secured for you a liberal sum under the circumstances, and we feel that you should appreciate the same. If you wish to sign the receipt and take up the draft, you now have an opportunity to do so."

The draft sent to the Kearney Savings Bank was on the First National Bank of Chicago, and was payable to George J. Delmege, secretary, and was indorsed by him in words as follows: "Pay Samantha Keck,

George H. Delmege, secretary." On a date not shown, plaintiff indorsed the draft as follows: "Pay Kearney Savings Bank for deposits. Samantha Keck." The draft was then forwarded to Chicago, accepted by the drawee on the twenty-third day of June, and paid on the twenty-eighth. On the date last named the plaintiff commenced in the district court of Buffalo county, Nebraska, an action against the defendant for its share of the loss. An attachment was issued, under which the Kearney Savings Bank was garnished as a debtor. The action was prosecuted to judgment, and the bank was ordered to pay the proceeds of the draft into the court to apply on the judgment. This action is brought to recover twelve hundred dollars, alleged to be the remainder due under the policy.

The defendant contends that the amount for which the draft was sent was the full amount it was required to pay by the contract of insurance, and that, if this was not true, the act of the plaintiff in indorsing the draft and causing it to be collected was an acceptance of the compromise tendered by the defendant, which is binding upon her. The plaintiff insists that the contract of insurance requires the defendant to pay its share of the loss in full, and denies that she has in any manner compromised her right to recover that amount. The facts upon which the defendant bases its claim that the draft represented the full amount of its liability to the plaintiff are alleged to be substantially as follows: The defendant was a mutual company, and depended chiefly upon the assessment of premium notes for money with which to pay its losses. Its premium notes and money on hand at the time of the loss in question amounted to about five thousand dollars, and in addition it had about twenty-three thousand dollars in deposit notes. It could collect only about twenty per cent. of its notes during any period of ninety days. It had sustained other losses at about the same

time, and the resources available for the payment of all its losses within the time required by the policies was but a little more than sixty per cent. of the total amount for which it was liable. The amount of the draft was more than sixty-seven per cent. of the amount due the plaintiff. The defendant further claims that the settlement it tendered was in accordance with the statutes of this state which must be regarded as a part of the contract of insurance. The plaintiff contends that the policy of insurance provided for the absolute payment of the full amount of the defendant's share of the loss, and that the amount to be so paid was not contingent upon the proceeds of any assessments.

Whether the claim that the amount tendered by means of the draft was all that the plaintiff was entitled to recover under the policy is well founded we need not determine. It is clear that the defendant claimed that such was the case, and that the draft was sent to be delivered to the plaintiff only in case it should be received by her as payment in full. She knew the claim of the defendant, and was fully advised in regard to the condition on which she was to receive the draft. The Kearney Savings Bank was the special agent of the defendant, with authority only to have the plaintiff sign the receipt which we have set out, and, when that was done, to deliver to her the draft, and return to the defendant the receipt. She knew, therefore, that the draft was tendered, not as payment of a larger sum which the defendant recognized to be due, but as full payment for all it admitted to be due, and that she was entitled to it only on condition that she should accept it in full satisfaction of her claims under the policy.

It is said that the plaintiff, by indorsing the draft, and leaving it with the bank, did not intend to accept the terms on which it was offered, but that her purpose in so doing was only to place the amount to be collected

on the draft within the jurisdiction of a Nebraska court; therefore, that although her act was unauthorized and wrongful, yet it should not be given the effect of an assent to the compromise.   In other words, plaintiff insists that, although her act indorsing the draft to the bank was not honest, but wrongful, yet it was intended to secure that to which she believed herself to be entitled, and that she should be permitted to profit by it.   The plaintiff cannot be permitted to avoid the legal effect of her act on the ground urged.   She had no right to indorse the draft excepting as owner, and had no right to deposit it in the bank excepting as owner.   She had no authority to provide for its collection as the property of the defendant.   She was not empowered to act for it any manner, and her attempt to make the Kearney Savings Bank its agent to collect the draft and hold its proceeds, that she might reach it by means of her attachment suit, was without effect.   By indorsing the draft she accepted it, and agreed to the compromise which it was tendered to effect.   The fact that she did not sign the receipt is not material, since she knew the condition on which alone she could acquire title to the draft.   See *Burlington Gas Light Co. v. Greene*, 22 Iowa, 508, 509.

It is urged that the amount due under the policy was admitted to be two thousand, four hundred and seventy-seven dollars and twenty-seven cents; that an agreement to receive less than that amount as payment in full would have been without consideration, and of no effect, and that the acceptance of the draft by the plaintiff on the condition on which it was tendered would not have extinguished the debt.   It is conceded that the board of adjusters fixed the defendant's share of the loss at two thousand, four hundred and seventy-seven dollars and twenty-seven cents, but it is not conceded that the defendant was at any time liable for the payment of that amount.   On the contrary, the defendant claimed,

after the adjustment was made, that the plaintiff was only entitled to the proceeds of an assessment of the premium notes, which were less than the amount fixed by the adjustment. The district court was authorized to find that the parties disagreed as to the amount to which the plaintiff was enlitled under the policy; that the draft was offered as payment in full, and as a compromise of the disagreement, and that by indorsing it the plaintiff agreed to the compromise. It is well established that the settlement of a disputed claim furnishes a sufficient consideration for the agreement of settlement. *Shaw v. C., R. I. & P. R'y Co.*, 82 Iowa, 199, 200, and cases therein cited; *Everts v. District Township of Rose Grove*, 77 Iowa, 37, 41; *McDaniels v. Bank of Rutland*, 29 Vt. 231; *Bull v. Bull*, 43 Conn. 455; *Potter v. Douglass*, 44 Conn. 541; *Berdell v. Bissell*, 6 Col. 163. We conclude that the district court was authorized to find that by the acceptance of the draft all liability of the defendant under the policy in suit was discharged.

The judgment of that court is therefore AFFIRMED.