30319. COOPER *v.* THE STATE.

692

DECIDED FEBRUARY 24, 1944.

*H. O. Farr, W. C. Little,* for plaintiff in error.

*W. Glenn Thomas, solicitor-general, Ringel & Ringel,* contra.

MACINTYRE, J. ■ The court, in its instructions on the law of voluntary manslaughter, defined that grade of homicide in the language of the Code, § 26-1007. Exception is taken to the following language: "Provocation by words, threats, menaces, or contemptuous gestures shall in no case be sufficient to free the person killing from the guilt and crime of murder." This language is a part of that used in the Code section defining voluntary manslaughter. The exception to this language is, "that it is without qualification or explanation to the effect that though words, threats, menaces, or contemptuous gestures can in no case mitigate a homicide from the offense of murder to voluntary manslaughter, they may justify a killing, if the circumstances attending the menaces were sufficient to induce a reasonable fear in the mind of the accused that he was in danger of losing his life or of having a felony committed upon him." The judge, separately and distinctly in other parts of his charge, had instructed the jury on murder, justifiable homicide, and self-defense in mutual combat, and was here charging separately and distinctly on the law of voluntary manslaughter. And in the language of the Supreme Court, we think, "surely it can not be said that it is error to define manslaughter in the words of the statute." *Price* v. *State,* supra. The contentions of the defendant are decided adversely to him in *Booker* v. *State,* 183 *Ga.* 822 (4) (190 S. E. 356); *Gresham* v. *State,* 70 *Ga. App.* 80 (27 S. E. 2d, 463); *Ellison* v. *State,* 137 *Ga.* 193 (6) (73 S. E. 255); *Price* v. *State,* supra. We think that the exception is without merit.

■ The judge charged the jury on the law of murder, voluntary manslaughter, and then on that phase of the law of justifiable homicide, as embodied in the Code, § 26-1011. He then explained the meaning of felony as used in that section, and then charged the jury on that phase of the law of justifiable homicide embodied in § 26-1014. This charge was as follows: "To justify a killing in self-defense, it must appear that the danger was so urgent and pressing at the time of the killing that in order to save his own life the killing of the other was absolutely necessary. However, if a person as a reasonable man under the surrounding circumstances as they then existed really believes his own life to be in danger, and acting on his reasonable fears for his own safety and for no other reason than to protect himself, he kills the person whom he thought he was in danger from, such killing would be wholly justifiable, although the jury might not believe he was actually in any danger at all; if the circumstances were sufficient to and did arouse the fears of the defendant for his own present safety, and these were the fears of a reasonable man, not that of a coward or child, then the danger was real to the defendant and he would be justified in defending against what he thought was immediate danger." The exception to this excerpt is "that it restricted the jury in their consideration of the defendant's plea of self-defense as to whether or not the danger was so urgent and so pressing at the time of the killing that the killing was absolutely necessary to save the defendant's life, and that this is not a correct statement of the law." The Code, § 26-1011, provides that, "There being no rational distinction between excusable and justifiable homicide, it shall no longer exist." The court had previously instructed the jury "that justifiable homicide is the killing of a human being in self-defense or in defense of habitation, property, or person against one who manifestly intends or endeavors, by violence or surprise, to commit a felony on either." This was in the very language of the Code, § 26-1011, and told the jury when the defendant would be justified in killing one who manifestly intended, or endeavored, by violence or surprise, to commit a felony upon him. One of the theories of the defense, which was authorized by one phase of the evidence, was that the homicide was justified against one who manifestly intended or endeavored by violence or surprise, to commit a felony on the defendant. Under this theory of defense, as embodied in §

26-1011, the slayer's justification would have been complete without showing that in order to save his own life, the killing of the other was absolutely necessary. The judge was here charging that theory of justifiable homicide as embodied in § 26-1011. There was also another theory of the defense, authorized by another phase of the evidence, that where a "fight has been begun and carried on in hot blood, both parties being at fault, and one of them is slain, the other can not justify the killing without showing that it was necessary." *Teasley* v. *State*, 104 *Ga.* 738, 741 (30 S. E. 938). This theory of defense is applicable to the kind of justifiable homicide stated in § 26-1014, which is as follows: "If a person shall kill another in his defense, it must appear that the danger was so urgent and pressing at the time of the killing, that, in order to save his own life, the killing of the other was absolutely necessary; and it must appear, also, that the person killed was the assailant, or that the slayer had really and in good faith endeavored to decline any further struggle before the mortal blow was given." This section is applicable only in cases of mutual combat. *Jones* v. *State*, 172 *Ga.* 500, 506 (158 S. E. 44). Thus, we think that the defendant had the benefit of a charge on two separate theories of defense; one theory being that of justifiable homicide, which is contained in the Code, § 26-1011, and is a defense against one who manifestly intends or endeavors, by violence or surprise, to commit a *felony* on the defendant. The other is the kind of justifiable homicide contained in § 26-1014. *Darby* v. *State*, 79 *Ga.* 63, 67 (3 S. E. 663). The excerpt here complained of related to the kind of justifiable homicide referred to in the latter section, and this theory of defense was authorized by one phase of the evidence. *Glover* v. *State*, 105 *Ga.* 597 (31 S. E. 584). From an examination of the entire charge it appears that there was no such confusion of the two theories as was calculated to injure the defendant. *Dover* v. *State*, 109 *Ga.* 485 (5) (34 S. E. 1030); *Carter* v. *State*, 171 *Ga.* 406, 413 (155 S. E. 670); *Hoye* v. *State*, 39 *Ga.* 722; *Burge* v. *Mangum*, 134 *Ga.* 307 (4) (67 S. E. 857); *Morgan* v. *State*, 137 *Ga.* 21 (72 S. E. 347); *Park* v. *State*, 126 *Ga.* 575 (10) (55 S. E. 489); *Powell* v. *State*, 101 *Ga.* 9, 23, 25 (29 S. E. 309, 65 Am. St. R. 277). We do not think the charge was reversible error for the reasons assigned.

■ The judge charged the jury in part as follows: "In all crim-

inal trials, however, the jury becomes the judges of the law and the facts; in this way alone, you determine what the facts are from the testimony delivered upon the trial, including the defendant's statement, giving that proper consideration, as I have already called to your attention, and then apply the law given by the court to the facts as you find them, to the evidence including the defendant's statement." The defendant excepted to this part of the charge on the ground that "the word 'testimony' is a statement of facts by witnesses, and that there was before the jury, in the trial of this case, certain other evidence, which was not testimony given upon the trial and was not a part of the defendant's statement, to wit: the knife used by the defendant in inflicting the mortal wound, the leather jacket which was worn by the deceased at the time of the killing, with a hole therein through which the knife had entered, a written statement made by the witness Robinson to the arresting officer on the day following the killing, and a written statement by the defendant previously given; that the excerpt complained of excluded from the consideration of the jury these pieces of evidence which were vitally material to the defendant's defense." The vital evidence here complained of was, according to statements in the brief of evidence, identified by the oral testimony of witnesses on the stand. Though the use of the word "testimony" in the first part of the excerpt is technically inaccurate, and while it would have been more precise to have instructed the jury that they should consider all of the evidence, oral, written, and physical, in applying the law to the case, we do not think that the jury was in any way misled by the particular expression of which complaint is made. Especially is this true, since, in the very concluding part of the sentence in the charge complained of, the judge stated: "And then apply the law given by the court to the facts as you find them, to the evidence, including the defendant's statement." *Moyers* v. *State,* 61 *Ga. App.* 324, 331 (6 S. E. 2d, 438); *Southern Railway Co.* v. *Wilcox,* 59 *Ga. App.* 785 (3), 787 (2 S. E. 2d, 225). We do not think that the jury understood that they were not to consider all the evidence (oral, written, and physical), and were to consider only the oral testimony. Even though the use of the word "testimony" as stated, instead of the word "evidence," was inapt, yet when considered with the charge as a whole it was not reversible error.

■ The charge on flight was full and fair, although in the last sentence, as it appears in the record, it was inaptly expressed; but when considered as a whole, the part excepted to was not calculated to injure the defendant, and is not considered reversible error.

■ When considered in connection with the note of the trial judge, attached to special ground 5, the exception therein taken to the remarks of the solicitor-general during his argument to the jury are without merit.

■ The evidence authorized the verdict.

*Judgment affirmed.* *Broyles,* `C. J.,` *and Gardner, J., concur.*