31362. SCOTT *v.* IMPERIAL HOTEL COMPANY.

92

Decided February 8, 1947. Rehearing denied April 2, 1947.

*Winfield Payne Jones,* for plaintiff.

*Powell, Goldstein, Frazer & Murphy, James K. Rankin, Newell Edenfield,* for defendant.

MacIntyre, J. ■ This is a suit by a former officer, secretary and treasurer of Imperial Hotel Company, against the company for his salary as a corporate officer from September 30, 1944, until April 13, 1945. To the petition the defendant filed a plea denying liability and amended his original answer and also filed a plea of accord and satisfaction. The burden was upon the defendant to prove such plea, and the issue so made was submitted to a jury, which found for the defendant. A judgment was entered, a motion for new trial overruled, and the plaintiff brings error.

On September 30, 1944, the plaintiff and Judge Robert Carpenter and his wife organized the defendant hotel company. Each of the parties held ten shares of its stock and its note for $6000 due September 30, 1947. At the initial meeting of the incorporators they decided that twenty shares of stock in the corporation would be sold to Guy A. Jones; and resolved that no stockholder would sell his stock until he had first given an opportunity to the defendant company or its original stockholders to purchase it; and also resolved that the company's fiscal year be fixed as of June 30, 1945.

On April 7, 1945, the plaintiff gave notice that his stock and note were for sale. The plaintiff and the executive vice-president of the defendant company (Robert Carpenter) negotiated with each other for a sale of their respective interests. Offers were made on both sides.

After verdict, in passing on a motion for new trial, that view of the evidence which is most favorable to upholding the verdict must be taken. *Johnson* v. *State,* 69 *Ga. App.* 663 (26 S. E. 2d, 482); *Vandeviere* v. *State,* 58 *Ga. App.* 18 (197 S. E. 338).

The executive vice-president, Carpenter, testified in part as follows: "In settlement and in the negotiations for the settlement, what was said about the annual officers' salaries. . . I told him [the plaintiff], I says, I am not going to buy the corporate set-up at all now; whatever I give you is going to cut you off from the corporation; you are going to surrender every claim you have got with the corporation; and don't come telling me that you are entitled to part of the profits, you are not entitled to this, that or the other after we settle up. This will be final in that respect, I says, that is the only kind of condition, the corporation of individuals is going to buy this from you, we are going to close it out at whatever time we figure."

Glenn Loudermilk testified that he was connected with the defendant hotel company as general manager, and that he "was present at the time when Mr. Scott and Judge Carpenter were discussing, and was there when the deal was actually put through and consummated. As to what was said by either of the parties with reference to whether or not the total consideration paid of $9850 [the consideration alleged to have been paid the plaintiff by the defendant was $10,000 less an agreed discount of $150. Hereinafter the alleged consideration will be referred to as $10,000] included the officer's salary for Mr. Scott as secretary-treasurer, what it amounted to—well, it was implied that it was a final settlement in all details, a final settlement. You ask me as near as I can remember what was said about that particular item—well, it was just general discussion and the judge just made the statement that it was a final settlement. Prior to that final deal Mr. Scott and I had discussions and Mr. Scott had undertaken to interest me in buying his stock. Mr. Scott did not make any statement in the negotiations that he was reserving the officer's salary as secretary and treasurer and would expect to be paid that in addition to the sum that was being paid him."

At the time of the completion of the transaction in question and the resignation of the plaintiff, he had only worked approximately six and one-half months. However, he testified: "In one conver-

sation with the judge I told him that I was entitled to an annual salary of $2500 from September 30, 1944, to the time I left, regardless of whether I was there as an officer the full 12 months. This took place in connection with the negotiations for the sale of my stock. . . I only mentioned that one time." Later, as he testified, after the close of the transaction, he wrote Judge Carpenter that he was claiming $2237.29, and thereafter he filed the present suit for $1786.87. Thus, the jury could have found that there was some confusion or at least uncertainty as to the exact amount of the plaintiff's salary as secretary and treasurer which was due him during the negotiations and even up to the time of their completion.

The minutes of the initial meeting of the board of directors showed that the only stockholders were H. S. Carpenter, who was elected president at a salary of $5000 per year, Robert Carpenter, who was elected executive vice-president at $3000 per year, Guy Jones, who was elected vice-president at $1200 per year, and the plaintiff, O. E. Scott, who was elected secretary and treasurer at $2500 per year. Elsewhere the evidence showed that Scott was employed as an auditor for the company at $100 per month, and that at the time of the present trade, which was followed immediately by his resignation, he had been paid this amount. Both of the Carpenters as well as the plaintiff Scott had set up on the books a drawing account, which each of them used; and no objection to this procedure was made by any of the stockholders or officers of the corporation. The evidence does not show that any salary as such was paid to the president, executive'vice-president, vice-president, or secretary and treasurer at the time of the negotiations or at the time of the consummation of the transaction.

The condition of the corporation was in this somewhat unsettled state of affairs as to such drawing accounts and as to the salaries of such officers, since none of these salaries appear to have been paid as such, but evidently remained undistributed or undisposed of in the treasury of the company as assets of the corporation. According to the plaintiff Scott, the negotiations in question finally led to a consummation of a sale only of his stock for $10,000; and, according to Carpenter, the executive vice-president of the corporation, the negotiations were proceeding for and finally consummated in a surrender by the plaintiff of every claim "you [the plaintiff]

have got against the corporation," including the plaintiff's stock certificates, whatever profits the company had accumulated, and his undrawn salary which was then in the treasury and was at that time a part of the undistributed or undisposed of assets of the company, and every other claim which the plaintiff had against the corporation, for $10,000.

It is the prerogative of the jury in arriving at a conclusion upon disputed issues of fact to believe certain parts only of the testimony of each witness and reject other parts of his testimony and combine these parts only with other parts only of the testimony of other witnesses and reject other parts of the testimony of each of the other witnesses; it being their duty to ascertain the truth of the case from the opinion which they entertain of all the testimony submitted for their consideration.

Where, as here, accord and satisfaction is pleaded to an action, on the ground that the same subject-matter of the suit was submitted in a negotiation for settlement between the plaintiff and the defendant, which culminated in a purchase, actually executed by the payment of the money, of "every claim" of the plaintiff by the defendant corporation for $10,000, and the evidence is conflicting as to whether such subject-matter was included or not in such purchase of "every claim" of the plaintiff against the defendant, that question is properly submitted to the jury for determination. *Madden* v. *Blain,* 66 *Ga.* 49; *American Tie &c. Co.* v. *Tyler,* 18 *Ga. App.* 640 (90 S. E. 86). See, in this connection, *Bass Dry Goods Co.* v. *Roberts Coal Co.,* 4 *Ga. App.* 520 (61 S. E. 1134); *Ryan* v. *Progressive Retailer Publishing Co.,* 16 *Ga. App.* 83, 86 (84 S. E. 834); *Riley & Co.* v. *London Guaranty & Accident Co.,* 27 *Ga. App.* 686 (109 S. E. 676); *Phillips* v. *Lindsey,* 31 *Ga. App.* 479 (3) (120 S. E. 923); DeLong v. Stanton, N. Y., 9 Johns 38, 42; Yniestra v. Tarleton, 67 Ala. 126, 129; United States v. Richardardson, 9 Fed. 804, 807.

■ Since the jury found that the sum of $10,000 had been paid to the plaintiff by the defendant in final settlement of "every claim" of the plaintiff against the defendant, the jury were also authorized to find that the sum of $10,000 was a valuable consideration for "every claim" of the plaintiff against the defendant, including the subject-matter of this suit, and to find in favor of the plea of accord and satisfaction.

■ Special ground 1 complains of the following charge: "The defendant has also filed an amendment to its original answer; and in the amendment it says that on April 13, 1945, plaintiff resigned his employment with the defendant, Imperial Hotel Company; that at that time, April 13th, 1945, plaintiff and Judge Robert Carpenter acting for the corporation agreed upon a final settlement of all liabilities then existing between the parties; that under the terms of said agreement the defendant, Imperial Hotel Company, was to pay to plaintiff the sum of [$10,000 less an agreed discount of $150] $9,850, said sum to cover all liabilities of the defendant to plaintiff both as stockholder, officer and employee; that in compliance with said agreement defendant did pay to the plaintiff the sum of [$10,000 less agreed discount of $150] $9,850; and that said agreement has been fully executed." The complaint is based upon the grounds: (1) that, there being no evidence of any controversy or dispute concerning the same, the law of compromise was not applicable; and (2) that the law of accord and satisfaction did not apply because there was no evidence of any consideration for the plaintiff's alleged surrender of his salary, or any agreement implied therefor, and any such implied agreement was nudum pactum and of no force and effect. The charge is not subject to the objections urged.

■ Special grounds 2 and 3. In the instant case, there was both oral and written evidence; however, we do not think that the jury understood from the charge that they were not to consider all of the evidence, oral and written, and were to consider only the oral testimony.

The judge in his charge inaptly used the word "testimony" in several instances, where it would have been more appropriate to have used the word "evidence," which he frequently and properly used elsewhere in the charge; yet, when considered with the charge as a whole, the use of the word "testimony" in such instances instead of the word "evidence" was not calculated to mislead the jury, and was not reversible error. *Southern Railway Co.* v. *Wilcox,* 59 *Ga. App.* 785 (3) (2 S. E. 2d, 225); *Cooper* v. *State,* 70 *Ga. App.* 691 (3) (29 S. E. 2d, 430).

■ In special ground 4 the plaintiff complains of the following portion of the charge of the court: "So, the question for you to determine in reference to this, gentlemen, is whether or not these

parties have gotten together and by mutual agreement that something was given to the plaintiff, and accepted by the plaintiff, in satisfaction of any right of action which he had against the defendant." The plaintiff contends that this portion of the charge is erroneous, because it does not give the true definition of an accord and satisfaction and because it leaves the jury under the erroneous impression that a mere agreement, without any consideration to support it, to surrender or acquiesce in a demand of the debtor to the creditor that the latter surrender his claim is sufficient to accomplish an accord and satisfaction. There is no merit in this contention. In the paragraph immediately preceding the above-quoted portion of the charge, the trial judge defined accord and satisfaction. The definition was clear and not misleading. The judge pointed out in his definition that a consideration was necessary for an accord and satisfaction. A charge, torn to pieces and scattered in disjointed fragments, may seem objectionable, although, when put together and considered as a whole, it may be perfectly sound. *Brown* v. *Matthews, 79 Ga.* 1 (4 S. E. 13).

The cases in the brief of the plaintiff in error are distinguishable by their particular facts from the instant case, and the judge did not err in overruling the motion for new trial.

*Judgment affirmed. Broyles, C. J., and Gardner, J., concur.*

### ON MOTION FOR REHEARING.

"But as an accord and satisfaction is an executed agreement whereby one of the parties undertakes to give, and the other to accept, in satisfaction of a claim arising either from contract or tort, something other or different from what he is or considers himself entitled to, no invariable rule can be laid down, with any degree of certainty, as to what constitutes such an agreement. Each case must be determined largely on its peculiar facts. To constitute a valid accord and satisfaction, not only must it be shown that the debtor gave the amount in satisfaction, but that it was accepted by the creditor as such. Jones *v.* Fennimore, 1 G. Greene, 134; Weddigen *v.* Fabric Co., 100 Mass. 422. The agreement need not be express, but may be implied from circumstances, as shown in the cases just cited. Where an offer of accord is made on condition that it is to be taken in full of demands, the creditor, doubtless, has no alternative but to refuse it or accept it upon such con-

ditions. Keck *v.* Insurance Co., 89 Iowa 200 [56 N. W. 438]. But even in such a case the debtor may consent to the creditor's receiving it on his own terms. Potter *v.* Douglass, 44 Conn. 541; Sicotte *v.* Barber, 83 Wis. 431 (53 N. W. 697); Gassett *v.* Town of Andover, 21 Vt. 342. . Whether or not there has been such a giving and acceptance as to amount to an accord and satisfaction is generally a question of fact for the jury." Perin *v.* Cathcart, 115 Iowa 559 (89 N. W. 12).

The inquiry here is, how did the plaintiff receive the $10,000 in money. Did he receive it for his stock merely, or did he receive it, as claimed by the defendant, upon the conditions attending the offer of the defendant, in full settlement of "every claim," including the plaintiff's salary in question? There are but two ways by which the money could have become his (plaintiff's) : (1) By receiving it in consideration of only his stock, with the defendant's consent; and (2) by receiving it in full satisfaction of "every claim" that he had against the defendant corporation. The jury, having accepted the testimony for the defendant rather than that for the plaintiff, were authorized to find that the *agreement was executed by the payment of money,* whereby the plaintiff received the $10,000 upon the conditions attending the offer of the defendant, in full settlement of "every claim" against such corporation, notwithstanding any mental reservation of the plaintiff to the contrary. Hence, the jury were authorized to find that the defendant had carried the burden of proving his plea of accord and satisfaction. *Burgamy* v. *Holton,* 165 *Ga.* 384 (141 S. E. 42).

*Rehearing denied. Broyles, C. J., and Gardner, J., concur.*