## MURRAY *v.* THE STATE.

1. The verdict was abundantly authorized by evidence.
2. It was not error to inform the jury that the prisoner was not subject to be cross-examined on his statement without his consent.
3. A charge of the court that "other equivalent circumstances," as used in the statute defining voluntary manslaughter, are such as are equal to an assault or an attempt to commit a serious personal injury, properly construed, means that the other circumstances must be such as would produce the same state of mind on the part of the defendant as would an assault or an attempt to commit a serious personal injury on him. Not any circumstance proved is sufficient to reduce the crime from murder to voluntary manslaughter; and it is proper for the court to charge the meaning of the words, "other equivalent circumstances."
4. A ground for new trial complaining of error in an extract from the charge of the court covering three pages of manuscript (a large portion of which seems to be sound), and pointing out no specific error, will not be considered.

April 25, 1890.

Criminal law. Shooting at another. Verdict. Charge of court. Prisoner's statement. Manslaughter. Practice. Before Judge HUTCHINS. Clarke superior court. April term, 1889.

Indictment for assault with intent to murder. The evidence for the State tended to show that Murray and Reaves, who were both in the livery and horse-trading business, were in front of a hotel in Athens about five o'clock on the afternoon of July 12, 1887, and Reaves

was speaking with another person about a horse when Murray walked up and joined the conversation. Some dispute arose between them as to the racing qualities of one of Reaves' horses, and a wager was proposed but not made. Reaves then sat down in a chair, put his feet on the rounds of it and leaned back against the wall. Murray, who was then about eight feet away, said, " The horse you are talking about is old cotton-eyed Joe, and he belongs to Holman." To this Reaves replied that any one who said the animal belonged to Holman was a damned liar. Murray had on a sack-coat and was standing with his hand in his pocket. He said, " Bob Reaves, do you mean to call me a damned liar ?" and Reaves repeated his former remark. Murray then said, " You won't call me a damned liar ; I know you of old, and you are a damned coward." Whereupon Reaves sprang to Murray, who fired one ball from a five-shooting revolver before being reached. They clinched, and Murray fired twice more and was beat by Reaves' fist. Then they were separated with difficulty, the fight having lasted about a quarter of a minute. The pistol balls went through Reaves' clothes, and one of them through his body, wounding him almost fatally. He had no weapon about his person. His clothes and Murray's pistol were shown to the jury. Murray ran away and staid until it was reported in the newspapers that Reaves would probably recover.

The evidence for the defendant tended to show that he and another person had recently bought out Reaves' livery business, after which Reaves went to the stable and took away some whips and lap-robes that were in-cluded in the purchase. He was required to return them ; upon which he said he had been " rousted " and would get even with a pistol or a match. He told two persons that he had a good pistol with five balls, and would empty three of them into Murray. He also said

to one witness that he wanted to kick Murray's damned a— and run him out of town. These threats were promptly communicated to Murray, who was nervous and excitable and suffering from a functional disorder of the heart, and indigestion, and was under treatment of a physician. He was ten or fifteen pounds lighter than Reaves. He did not pull out his pistol until Reaves reached him, and the shooting occurred after they went down into the street. They fell to the ground in fighting. As Reaves went at him, he struck him on the head, knocked him off the curbing and got on him.

As to the threats there was some conflict in the testimony; and Reaves denied making them. It appeared that a few days previously he was met on the street by Murray and his uncle, when something in the nature of a quarrel ensued, and Reaves went into a storehouse near by and telephoned to his office for a pistol to be brought him, saying that things were getting hot; but it seems that nothing further was done on that occasion.

The defendant was found guilty of shooting at another. To the refusal of a new trial he excepted.

THOMAS & STRICKLAND and LUMPKIN & BURNETT, for plaintiff in error.

R. B. RUSSELL, solicitor-general, for the State.

SIMMONS, Justice.

Murray was indicted and tried for the offence of assault with intent to murder, and convicted of shooting at another. He made his motion for a new trial upon the several grounds stated therein, which was overruled by the court, and he excepted.

1. The first three grounds of the motion are the usual ones, that the verdict was contrary to evidence, without evidence to support it, and contrary to law. There was no error in refusing to grant a new trial upon

these grounds. If the jury believed the witnesses for the State, which they had a right to do, there was an abundance of evidence to authorize the finding of their verdict that the accused was guilty of the offence of shooting at another. The 4th ground of the original motion was not insisted upon in the argument here.

2. The first ground of the amended motion complains that the court erred in charging the jury that "The law allows a defendant to make such statement in his own behalf as he may see proper. He does not make his statement under oath, and is not subject to be cross-examined by the State's counsel without his consent to be so examined." It is contended by counsel for the plaintiff in error that the court erred in stating to the jury that the defendant was not subject to be cross-examined without his consent. We do not think this was error. It was simply a quotation from the statute authorizing the defendant to make a statement in a criminal case, and we think the court had a right to inform the jury of this fact so as to put them upon notice that the statement was *ex parte* on the part of the defendant.

3. The 2d ground of the amended motion complains that the court erred in charging the jury as follows: "Other equivalent circumstances, as used in the statute [defining voluntary manslaughter], are such as are equal to an assault or an attempt to commit a serious personal injury," etc. The exception taken to this charge was as to the definition by the court of "other equivalent circumstances," counsel alleging that the definition limited the jury to circumstances in the nature of an assault, or an attempt to commit a serious personal injury. We do not think that this charge, properly construed, could bear such interpretation. The meaning of the court evidently was that the other circumstances must be such as would produce the same state of mind

on the part of the defendant as would an assault upon
him or an attempt to commit a serious personal injury,
in order to justify the excitement of passion and to ex-
clude all idea of deliberation or malice.   In this charge
it was left to the jury to determine, not only whether
there was such an assault or attempt, but whether there
were any circumstances other than those of an assault
or an attempt by the prosecutor to commit a serious
personal injury upon the defendant equal thereto; and if
the jury found that there were such circumstances,
whether, in their opinion, they did in fact justify the ex-
citement of passion and exclude all idea of deliberation
or malice.   We do not think the court restricted the jury
in their consideration to circumstances in the nature of
an assault or an attempt to commit a serious personal
injury, but that his instruction to them was that equiva-
lent circumstances must be such as would create the
same state of mind on the part of defendant as would
an assault or an attempt to commit a serious personal
injury.   We do not agree with counsel that the jury
should be turned loose in cases like this, and be allowed
to say that any circumstance proved in the case would
be sufficient to reduce the crime from murder to volun-
tary manslaughter.   It was the right and duty of the
court to instruct the jury as to what was the proper mean-
ing of "other equivalent circumstances," and not to allow
them to grope in the dark for the meaning of the words.
It was his duty to instruct them upon the law of the case,
and he could not do that intelligibly to them without
defining the meaning of the words, "other equivalent
circumstances."   The latter part of the charge, as re-
cited in this ground of the motion for a new trial, as it
comes here, is not intelligible, and was not insisted upon
in the argument before us.   The 3d ground of the
amended motion was abandoned in the argument of
counsel before us.

4. The 4th ground of the amended motion complains of a portion of the charge, set out in three pages of manuscript. There is no specific allegation of error made to this long extract, and as the alleged errors are not pointed out in the motion, and a large part of the charge seems to us ·to be sound, we do not feel it our duty to hunt through the charge for errors.

*Judgment affirmed.*