## Commonwealth *v.* McLaughlin, Appellant.

*Criminal law—Murder—Voluntary manslaughter—Evidence.*

At the trial of an indictment for murder and voluntary manslaughter it appeared that the prisoner, who was the proprietor of a drinking saloon, became engaged in a quarrel with the deceased, and after ordering him to leave the saloon threatened to strike him with a club. The deceased accompanied by a friend left the saloon, but shortly afterwards the friend returned and asked for their hats which had been left behind. Evidence for the Commonwealth tended to show that the prisoner crossed the room, picked up a heavy iron bar four feet long, opened the door and stepping into the alley raised the bar with both hands and struck a blow which fractured the deceased's skull and caused his death. The prisoner claimed that he struck the blow while standing in the saloon, and resisting the attempt of the deceased to enter. It did not appear that deceased had assaulted or attempted to assault the prisoner at any time, or that the prisoner had reason to apprehend personal violence. *Held*, that a conviction of voluntary manslaughter should be sustained.

It seems that under the testimony there might well have been a conviction of murder in the first degree.

Argued April 9, 1894. Appeal, No. 134, Jan. T., 1894, by defendant, from judgment of O. & T. Luzerne Co., April T., 1893, No. 100, on verdict of guilty of voluntary manslaughter. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Indictment for murder and voluntary manslaughter. Before LYNCH, J.

The facts appear by the opinion of the Supreme Court.

Defendant's points were among others as follows :

"1. That if the jury find that Gilmartin began the trouble, was abusive and insulting to the defendant, and, with Gownley, was ejected from the defendant's premises, and they attempted to re-enter the defendant's premises, the defendant was justified in using such force as was necessary to prevent their re-entry. *Answer:* I cannot affirm that point as stated. The defendant had the right to prevent these people from entering his premises against his will under the circumstances described here, but under the evidence, so far as he had been informed, the defendant had no right to prevent their entry by

using (if you find that he did) such an instrument as that bar, either with a blow upon the arm of Gownley or upon the head of Gilmartin." [1]

" 2. That if· the jury find that the defendant had reasonable grounds for believing that Gilmartin was attempting to return· into the hotel for the purpose of creating a disturbance, or of ·originating a fight, then the defendant·would be justified in using all necessary means to keep Gilmartin out of his hotel. *Answer:* The prisoner would be justified in using all lawful, necessary means in keeping Gilmartin out of his· hotel, if he had good, honest·and faithful reasons, and not a pretext. But, I repeat, that. even if he did believe, according to what has been shown here, that these men wished to enter the house for the purpose of creating a disturbance, or originating a fight, he would have no right to strike either of these men a severe blow upon a vital part with that bar.". [2]

" 3. That in resisting the attempt of Gilmartin, or Gownley, or both, to re-enter his hotel, the defendant had a right to use such force as was necessary under the surrounding circum- ·stances as they were reasonably apparent to him, and he is not to be now judged by the circumstances as they actually appeared on subsequent investigation. *Answer :* The point is affirmed. If the jury find credible evidence in this case which shows, first, that McLaughlin struck the blow, and at the time he struck he had substantial reasons, from what appeared to him, then and there, that his life was in danger of great or severe bodily harm being done him by these people outside, he must be judged now by how it appeared to him at that time, and not ·as it now appears. To have the prisoner wait until there was ·actual danger of taking his life, or actual danger of grievous ·bodily harm done to him, as it was made to appear subsequently on trial, would be placing him under too great a burden. To illustrate what I mean : Supposing A were walking down South Main street, and he met a person who he believed bore ill will, or malice, in fact, toward him, and this person whipped out of his hip pocket a revolver, pointed it at A, and said, I will shoot you ; and then A drew from his bosom a knife and stabbed his assailant in a vital part to death. It might subsequently appear that the pistol was not loaded and the deceased could have done no injury. A, under such circumstances, would be judged by

how it reasonably, truly and faithfully appeared to him at the
time of the attack.   There must be no false pretext set up for
the purpose of avoiding responsibility for crime, the jury must
decide how did it truly appear to the prisoner at that time.   Did
it appear to the prisoner that at the time his life was in danger,
or that he was in danger of receiving grievous bodily harm ?
If so, he was not bound to retreat from the door.   He was in
his own house, had a right to stand by his door, and these peo-
ple had no right to force it, or do him bodily injury whilst he
was trying to keep it shut, and them out." [3]

Verdict of guilty of voluntary manslaughter.   The prisoner
was sentenced to imprisonment for five years and five months.

*Errors assigned* were (1–3) instructions, quoting them.

*W. H. McCartney, John T. Lenahan* with him, for appellant,
cited : 1 Hale, P. C. 458 ; 2 Whart.'s C. L., 7th Revised ed.
§ 1024 ; Bishop's Cr. L. § 858 ; Com. v. Daly, 4 Pa. L. J. 370 ;
Pond v. People, 8 Mich. 150 ; Com. v. Drew, 4 Mass. 391 ;
State v. Zellers, 2 Halsted, 243.

*James L. Morris* and *John M. Garman*, district attorney, for
appellee, cited : Whart.'s Cr. L., 9th ed. §§ 405, 466, 566, 624,
625.

OPINION BY MR. JUSTICE FELL, Oct. 1, 1894 :

James McLaughlin was convicted of voluntary manslaughter
in causing the death of James Gilmartin.   The Common-
wealth's case was this : Late on a Saturday night James Gil-
martin and his nephew John Gownley went to the saloon or
hotel of James McLaughlin.   They had been drinking at other
saloons during the evening, and drank a number of times at
McLaughlin's.   Gilmartin became engaged with several per-
sons there in a heated political discussion, which led to the ex-
change of abusive language between him and McLaughlin.
He was ordered to leave the saloon, and upon his refusal to do
so McLaughlin armed himself with a club or mallet and at-
tempted to strike him.   A number of persons present inter-
fered to prevent this, and while one held McLaughlin others
led Gilmartin out by a side door.   John Gownley, who had of-

fered to take Gilmartin home, went out with him, and soon afterward knocked at the door and asked for their hats, which had been left in the saloon. McLaughlin crossed the room, picked up a heavy iron bar four feet long, opened the door and stepping into the alley raised the bar with both hands and struck a blow which fractured Gilmartin's skull and caused his death. He was prevented by Gownley from striking a second blow.

The prisoner admitted striking a blow with the iron bar, but asserted that it was directed at the hand or arm of Gownley, who was trying to push the door open and re-enter the room. He testified that after there was a call for the hats he opened the door wide enough and passed one hat out, that Gownley pressed against the door in his effort to get into the room, and that after warning him to desist, and while standing in the saloon, he struck a blow through the opening between the edge of the door and the frame. Fortunately for the prisoner the jury accepted this version of the affair, and convicted him of manslaughter. Under the testimony for the Commonwealth there might well have been a conviction of murder of the first degree.

The complaint now is that, upon the trial, due weight was not given by the learned judge to the fact that McLaughlin was defending his house against aggressors who were seeking to force their way in for an unlawful purpose, and to this the assignments of error relate.

As there was no such fact in the case it is needless to discuss the legal propositions suggested. McLaughlin was not defending his house against intruders, nor was he in danger of personal violence from them. He kept a public house, to which Gilmartin and Gownley lawfully came. His conduct during the time they were in the saloon had been threatening and violent. Gilmartin had not assaulted or attempted to assault him, and he had had no quarrel whatever with Gownley, whose whole effort had been to prevent violence. Both men had gone out peacefully, and some minutes afterward returned for their hats, which was their right. Gownley knocked at the door and asked for them. He was the only one who spoke. He used no violent language and made no threats, but rather pleaded to be let in. McLaughlin was surrounded by his friends, and had no reason to apprehend personal violence, or unlawful con-

duct of any kind. It is idle to assert that the blow which he struck was to repel an unlawful invasion of his house. Such a view of the case does not arise from the testimony, but is suggested only by the points submitted for charge by the defendant.

The judgment is affirmed.