BOOKER *v.* THE STATE.

No. 11661. FEBRUARY 11, 1937.

*Hugh E. Combs* and *C. D. Colley,* for plaintiff in error.

*M. J. Yeomans, attorney-general, J. Cecil Davis, solicitor-general, B. D. Murphy, E. J. Clower,* and *Earle Norman,* contra.

JENKINS, Justice. Tom Booker was convicted at the August term, 1936, of the superior court of Wilkes County, of the offense of murder, with a recommendation of mercy. The evidence shows that the deceased, H. A. Sturdivant, chief of police of the City of Washington, Georgia, and S. C. Hopkins, the night police chief of that city, in response to a telephone call from Augusta, Georgia, late in the afternoon of the 4th of July, were on the lookout for a four-door Plymouth sedan, stolen on the 3d of July in Augusta from Marietta Jones. Later in the afternoon of the 4th of July, a car was seen by Sturdivant and Hopkins, and was overtaken by them on Liberty Street in the City of Washington. When first seen by these officers, the defendant was driving the car, a Plymouth automobile. The officers overtook it, crowded it to a curve, and it stopped. The officers left the automobile in which they were riding, and Chief Sturdivant went to the side of the car on which the driver (defendant) was seated, and opened the door. Officer Hopkins went to the other side of the car. At that time the officers had on their regular uniforms and police caps. On the cap of Sturdivant was embroidered the words "Chief of Police." The caps could be seen by the defendant. The officers told the defendant to get out. He refused to do so. Officer Hopkins took his handcuffs from his belt and tried to handcuff

the defendant. The defendant grabbed the handcuffs, and the officer twisted them out of his hands. The defendant then reached for the gun in the holster on the belt of Officer Hopkins, but was unable to get the gun. During this time the motor of the car was not running. When the defendant was unable to get the gun from Officer Hopkins, he pushed the clutch of the car in with his left foot. There was no switch-key in the car. It was not necessary to have a switch-key, as the car had been rewired around the switch, and the engine would start by pressing on the starter. After the defendant pushed the clutch in with his left foot, he stepped on the starter. The engine started. The defendant raced the motor, and took his foot off of the clutch. The clutch engaged with a tremendous jerk, and the car crashed into a telephone pole. Chief Sturdivant fell to the pavement, sustaining injuries from which he died six or seven days later. The defendant fled, and was caught on the next day, about nine miles from the place of the killing. The car that he was driving was the one that had been stolen in Augusta. In his statement at the trial he claimed that he did not know that the two men who jumped on his running-board and grabbed him were officers; that he did not know what the officers wanted; that he had bought the car in Augusta, and did not know it was stolen. He further denied wiring the car in the manner in which it was wired. Other facts and grounds of exception, necessary to determine the questions raised, are sufficiently stated or indicated in the syllabus and the following opinion.

The excerpt from the charge to the jury, referred to in paragraph 6 of the syllabus is as follows: "However, if you should believe under the evidence, facts, and circumstances of this case, including the defendant's statement, that it was a sudden killing, that he had no intention to do so, or, as already defined to you, that the killing of Mr. H. A. Sturdivant was with an instrument that in the manner used at the time was an instrument likely to kill, but a killing under circumstances to justify the excitement of passion, and to exclude all idea of deliberation or malice, either express or implied, why in that event it would be voluntary manslaughter." The exception is as follows: "The above charge as a whole is very confusing. It is an incorrect statement of the law, and in all probability was misleading to the jury and injuri-

ous to the accused. Voluntary manslaughter is an intentional killing, and should the jury have believed the testimony showed that the defendant was guilty of voluntary manslaughter, and at the same time believed it was an intentional killing, they most certainly would not have returned a verdict for voluntary manslaughter under these instructions from the court. The following portion of the charge is especially objected to: 'However, if you should believe under the evidence, facts, and circumstances of this case, including the defendant's statement, that it was a sudden killing, that he had no intention to do so, . . in that event it would be voluntary manslaughter.' Most assuredly, we contend, this is an incorrect statement of the law. As above stated, voluntary manslaughter is an intentional killing. The defense of the accused was that the killing was the result of misfortune and accident, and he claimed it was an accident for which he was not responsible, his hands being held by the deceased and his brother officer from before the time the automobile was started until it struck the post, which caused the accident, and therefore he did not have and could not have had any control over the steering of the car. The defendant contended there was no evil design on his part, that there was no intention to commit a crime, and no culpable neglect on his part; that there was no union or joint operation of act and intention on his part. Therefore this charge destroys the whole defense of the defendant, and we contend is error requiring a new trial. This charge instructs the jury that the defendant would be guilty of a felonious crime, even though he had no intention to commit a crime."

The brief of the State Department of Law contends that this excerpt should be construed in connection with the charge as a whole, bearing in mind that the court had previously instructed the jury in the language of the Code on both voluntary and involuntary manslaughter, and that although "the particular portion of the charge complained of may have been inapt, and perhaps erroneous, nevertheless, in view of the fact that the jury found the defendant guilty of murder rather than voluntary manslaughter, such charge, if erroneous, was harmless." There is difficulty in adopting this reply as adequate to meet the contention of the plaintiff in error, since the basis of the complaint is that the charge by its language may have precluded the lesser verdict of

voluntary manslaughter instead of the verdict of murder as rendered. The fact that a verdict of voluntary manslaughter was not found does not seem to dispose of the exception. In the brief by the solicitor-general it is suggested that the judge may have intended to use the word "necessity" rather than the word "intention" in the quoted excerpt; and if so, the statement as made could not have been confusing or misleading to the jury. His contention is, that, since the charge as a whole was correct on the subject involved, any such patent inaccuracy could not have been calculated to mislead the jury; citing *Jones* v. *State,* 128 *Ga.* 23 (7) (57 S. E. 313); *Lyle* v. *State,* 69 *Ga.* 762 (2). He also, like counsel of the Department of Law, contends that since the defendant was convicted of murder, and not manslaughter, he can not complain of any charge as to the latter offense; citing *Rucker* v. *State,* 135 *Ga.* 391 (69 S. E. 541), where it was held that on a trial for murder "a *correct* charge on the law of manslaughter, even though not authorized by the evidence, would not be cause for the grant of a new trial, where the defendant was convicted of the highest offense of murder." (Italics ours.) In the case before us, the difficulty lies in the fact that it is contended with force and earnestness that this portion of the charge relating to voluntary manslaughter was *not* correct, and that by reason of such error the defendant might have been convicted of murder instead of the lesser offense of manslaughter. Since the word "intention" as used by the judge conveys a definite meaning, and since it can not reasonably be taken as a mere slip of the tongue, it seems necessary to determine if the language was in fact erroneous; and if so, could it have been harmful to the defendant, in that it might have caused the jury to find him guilty of murder instead of manslaughter?

As has already been stated, before the use of the language excepted to, the judge had given in charge the law of voluntary manslaughter, in this language: "I charge you, gentlemen, that voluntary manslaughter is the intentional killing of a human being, or the killing of a human being by the intentional use of an instrument that in the manner that it is used at the time is likely to kill, but a killing under circumstances to justify the excitement of passion, and to exclude all idea of deliberation or malice, either express or implied." The judge followed this by giving the law

of involuntary manslaughter as defined by the Code, § 26-1009, as follows: "Involuntary manslaughter shall consist in the killing of a human being without any intention to do so, but in the commission of an unlawful act, or a lawful act, which probably might produce such a consequence, in an unlawful manner; Provided, that where such involuntary killing shall happen in the commission of an unlawful act which, in its consequences, naturally tends to destroy the life of a human being, or is committed in the prosecution of a riotous intent, or of a crime punishable by death or confinement in the penitentiary, the offense shall be deemed and adjudged to be murder." It was after these charges on voluntary and involuntary manslaughter that the language excepted to was used. It seems apparent that the judge was then dealing with a situation covered by the last sentence or proviso in § 26-1009, dealing with involuntary manslaughter, which prohibits a homicide from being adjudged anything less than murder, even where involuntary, if the killing occurs in the commission of an act that is not only unlawful but naturally tends to destroy human life. The judge apparently sought to qualify and soften this rule by instructing the jury in effect that though an involuntary killing occurred while the defendant was illegally resisting an arrest, and though in so doing he used an instrumentality of such character and in such manner as would naturally tend to destroy human life, even then the offense would not constitute murder but only voluntary manslaughter, if it further appeared that the defendant then and there acted suddenly and under the excitement of passion, so as to exclude all idea of deliberation or malice. Therefore the charge excepted to operated in favor of and not against the defendant. He can not be heard to complain, whether it be erroneous or not.

*Judgment affirmed. All the Justices concur.*