30150.   GRESHAM *v.* THE STATE.

D<small>ECIDED</small> O<small>CTOBER</small> 26, 1943.

W. W. Armistead, Shackelford & Shackelford, for plaintiff in error.   R. Howard Gordon, solicitor-general, Hamilton McWhorter Jr., contra.

MacIntyre, J. ■ The ruling announced in headnote 1 does not require any elaboration.

■ The defendant contends that it was error in that "part of the charge dealing with manslaughter, to charge the doctrine of reasonable fears, as reasonable fears has no part in a charge on voluntary manslaughter." The defendant was indicted for murder. The judge charged the jury, separately and independently of each other, the law of murder, the law of voluntary manslaughter, and the law of justification. In charging the jury on the law of manslaughter, the judge gave to them the principle that if the deceased actually made an assault, less than a felony, upon the accused, or, if the facts and circumstances were such only as to excite the fears of a reasonable man that some bodily harm to the accused, less than a felony, was imminent and impending, the jury would be authorized to find the defendant guilty of voluntary manslaughter. In so doing he was not charging contrary to the holding that "the doctrine of reasonable fears has no connection with the offense of voluntary manslaughter." *Rawls* v. *State,* 160 *Ga.* 605 (2) (128 S. E. 747) ; *Booker* v. *State,* 183 *Ga.* 822 (4) (190 S. E. 356) ; *Adkins* v. *State,* 137 *Ga.* 81 (6) (72 S. E. 897). While the doctrine of reasonable fears, as it relates to an assault upon the person killing, may be applicable in determining whether the homicide was voluntary manslaughter, it stops "right there," and has no connection with the defense of voluntary manslaughter which would authorize an acquittal of the defendant. *Johnson* v. *State,* 72 *Ga.* 679, 695. Even if it were shown that the facts and circumstances surrounding the accused at the time he killed the deceased were such as to excite the fears of a reasonable man that some bodily harm, less than a felony, was imminent and impending, it would not be a defense to voluntary manslaughter; but, on the contrary, would tend to establish the fact that the offense committed was voluntary manslaughter. The only defense based on reasonable fears of an assault that would free the accused of a criminal homicide, would be where the facts and circumstances surrounding the accused were such as to excite the fears of a reasonable man that a felonious assault was being made upon him, and immediately upon the establishment of this defense by proof, it would necessarily establish the fact that no crime of voluntary manslaughter had been committed. And if no crime of voluntary

manslaughter had been committed by the accused in killing the deceased, there would be no necessity for proof of a defense to a crime which had never been committed. In fact, there could be none. To illustrate: If in the trial of a case in which the defendant was indicted for voluntary manslaughter, the State proved the killing of a human being by the defendant, and the defendant introduced evidence that the facts and circumstances of the killing were such only as to excite the fears of a reasonable man that some bodily harm, less than a felony, was imminent and impending, and thereupon both the State and the defendant closed their cases, the defendant would not have established any defense to the crime charged in the indictment (voluntary manslaughter), although he had proved such "reasonable fears." On the contrary, he would have proved the State's case of voluntary manslaughter as charged in the indictment. Hence it is said that "the principle of reasonable fears has no connection with the defense of voluntary manslaughter." *Booker* v. *State,* supra. See in this connection *Vernon* v. *State,* 146 *Ga.* 709, 714 (92 S. E. 76).

The court did not commingle the law of voluntary manslaughter with the law of justifiable homicide based upon reasonable fears. In charging the law of justifiable homicide, as it related to the doctrine of reasonable fears, the court charged that the assault, real or apparent, must have been a felony in order to justify the homicide. In charging separately and independently on the law of voluntary manslaughter, he instructed the jury, in effect, that if the facts and circumstances surrounding the accused were such only as to excite the fears of a reasonable man that some bodily harm, less than a felony, was imminent and impending, it would be voluntary manslaughter. Thus he was stating under what circumstances the jury would be authorized to convict for the crime of voluntary manslaughter, and not what would justify the defendant in killing the deceased; for, under the charge, if the assault referred to was less than a felony, the accused would not be justified, but would be partially excused by reason of a just passion aroused by the real or apparent assault. Yet, the defendant would still be guilty of a crime graded below the crime of murder, which in our Code is denominated "voluntary manslaughter," even though the facts and circumstances were only such as to excite the fears of a reasonable man that an assault upon his person less than a felony was immi-

nent and impending. When the court charged these principles of law independently of each other, the court did not, as contended by the defendant, inject the law of justifiable homicide based on reasonable fears into the definition of the law of voluntary manslaughter. But, on the contrary, we think that the court *differentiated* these two phases of homicide, to wit: voluntary manslaughter and justifiable homicide. See in this connection *Johnson* v. *State,* supra; *White* v. *State,* 147 *Ga.* 377, 382 (94 S. E. 222).

■ The defendant contends that the evidence did not authorize the verdict of voluntary manslaughter. "In determining whether the homicide was murder or manslaughter, it is the prerogative of the jury to believe certain parts only of the defendant's statement and to combine those parts with certain parts only of the evidence." *Goldsmith* v. *State,* 54 *Ga. App.* 268, 271 (187 S. E. 684). The jury were authorized to find, under some phases of the evidence and the defendant's statement, that at the time in question the defendant was using his house as a public place for the sale of "barbecue meat;" that on the night in question, the deceased made several trips in his automobile in transporting various people [including his wife] to the defendant's house; that he also left some groceries there; that the next morning "about sun-up," he returned for his wife and the groceries; that the defendant knew that he had left the groceries there; that his wife joined him when he entered the defendant's yard; that a quarrel occurred in the yard near the house between the defendant's daughter and the deceased and the defendant joined in the argument; that all three of them were cursing; that the defendant left them and went into his house; that the deceased approached the door with his knife in his hand [there was no testimony to show whether it was a dangerous weapon or not], but stated that he was going in the house to get his groceries; that the defendant told him not to enter, and as he approached the door, the defendant shot and killed him. Section 26-1013 of the Code, which refers to self-defense in instances of forcible attack and invasion of the property or habitation of another, requires both *a forcible attack* and *an invasion* of the property or habitation of another. This section, as applied to the facts in the instant case, does not provide merely for the attack upon the person, or merely for the invasion of the habitation, but the

84

"forcible attack and invasion" must *both concur* in order for the provisions of the section to apply. It will be noted that the deceased had gone into the defendant's yard, a public place, to which he had been invited as a member of the public, as he had a right to do, for the purpose of entering the house to get his groceries. Thereafter, the quarrel started on the premises, and seems to have progressed until the killing occurred on the same premises, as the deceased was endeavoring to enter the house. The evidence would seem to make a case of an attack upon the defendant's person rather than upon his habitation. *Freeney* v. *State,* 129 *Ga.* 759, 769 (59 S. E. 788); *Waters* v. *State,* 146 *Ga.* 102 (3) (90 S. E. 712); Commonwealth *v.* McLaughlin, 163 Pa. 651 (30 Atl. 216). We think the jury were authorized to find that the defendant shot and killed the deceased, not to save his own life, or to prevent the commission of a felony, real or apparent, upon himself; but that the shooting was the result of a sudden heat of passion aroused by "some actual assault upon the person killing, or an attempt by the person killed to commit a serious personal injury on the person killing." Code, § 26-1007. The verdict of voluntary manslaughter was authorized by the evidence. *Plymel* v. *State,* 164 *Ga.* 677 (139 S. E. 349); *Amerson* v. *State,* 26 *Ga. App.* 68 (105 S. E. 378).

■■■ Grounds not covered by the discussion herein are not meritorious.

*Judgment affirmed. Broyles, C. J., and Gardner, J., concur.*