## 20881.  GARDNER v. THE STATE.

Mobley, Justice.  Hilton Gardner was convicted of murder without a recommendation for mercy, in the Superior Court of Lamar County.  From the judgments overruling his demurrer to the indictment and denying his motion for a judgment notwithstanding the verdict and motion for new trial on the general and thirteen special grounds, he excepts. *Held:*

1. To the indictment charging that the defendant "  .  .  . with force and arms did unlawfully, feloniously, and with malice aforethought kill and murder Hoke Norton by hitting, striking & beating him, the said Hoke Norton, with his, the said accused's, hands and fists and other weapons and instruments to the grand jury unknown," the defendant demurred on the grounds that it did not allege the crime of murder, that it did not allege that the weapons were such as are likely to produce death, that the language was too indefinite and uncertain to charge any crime against the State, and that the indictment alleged only a simple assault and battery.  The allegations of the indictment are sufficient to allege the crime of murder and are sufficiently definite and certain.  See *Johnson v. State*, 186 *Ga.* 324, 333 (1) (197 S. E. 786), where this court held that language in an indictment alleging that the defendant killed and murdered the named decedent by striking him with a "certain instrument unknown to these grand jurors," from which injury he died, was sufficient.  Accordingly, the trial court did not err in overruling the demurrer.

2. A motion for a judgment notwithstanding the verdict will not

lie in a criminal case. *Wilson* v. *State,* 215 *Ga.* 775 (113 S. E. 2d 607) ; *Hooks* v. *State,* 215 *Ga.* 869 (114 S. E. 2d 6).

3. The general grounds are without merit. The evidence discloses that the deceased, a white man, about the middle of the afternoon on Sunday, March 15, 1959, picked up the defendant and another Negro, Charlie Barkley, in his car and drove to the defendant's house; that all three were drinking; that before sundown Barkley left the house, leaving the defendant and the deceased there; that early Monday morning, March 16, the defendant went to a neighbor's house, told him that he had killed the deceased, and wanted him to take him to the sheriff for protection; that he took him to the sheriff, who placed him in jail. The defendant admitted to the sheriff that he had killed the deceased. Deputy Sheriff Waller testified that the defendant admitted that he had killed the deceased, and, as to what he told him, Waller testified as follows: ". . . he said, 'I killed him with my fists' . . . He said, 'I asked him, "Mr. Norton, when are you going to pay me my money?" ' He said he was there fixing to build a fire, and while he was stooping down, he said, 'Mr. Norton, when are you going to pay me, my money?' And he felt something on his back, like he jumped up on his back; and then Hilton said he swung around—he's left-handed—and he come around and caught him in the pit of his stomach just as hard as he could hit him. It bent him over, and then he commenced pounding him with his fists for all he could do, and he beat him all the way through to the back room, to the hall. He slammed him up against the door facing on one side, and then he said he, don't know what he done. He was just hitting him just as hard as he could for all he was worth, and then he carried him across the hall and slammed him up against the door facing there and the door flew open and he fell in there on the floor. He said, 'I stood there and watched him,' said, 'I was so mad I didn't know what to do, and if he had moved I would have grabbed him up and started beating on him again.' " There were blood spots in the house and the deceased's body was found in the back seat of the defendant's car by the sheriff and other officers on Monday morning. Dr. Herman Jones, who made an autopsy on the deceased's body, testified that the cause of death was "massive, multiple fractures to the skull, traumatic brain injury and massive injury to the

brain . . ." and that the "massive fractures, especially on the right side of the head, were inflicted with some tremendous force of a blunt type of instrument, which did not cut the scalp externally, but simply drove the scalp and bone inside, into the brain;" that the injury to the right and left eyes and the tremendous blow to the right side of the head were inflicted by a blunt instrument, and that they could not have been caused by someone striking the deceased with his fists and knocking him against the wall or door panel, as there was too much massive fracture for that; that there was a minimum of three blows to the head with a blunt instrument, and that either one of these blows would have incapacitated him from further resisting attack. There were some large sticks of fire wood in the room where the decedent was killed. In his statement, the defendant said that he asked the deceased about his money; that, while he was stooping over the fireplace trying to turn over a piece of wood, the decedent jumped on his back; that he had to do all he could to protect himself; that he hit the deceased and knocked him against the door facing and wall; that the deceased fell against a door which opened and he fell to the floor; and that he "stood over him to see if he would get back up. If he tried, I was going to try him again, but he didn't get up."

The evidence was sufficient to justify the conclusion that the defendant, without provocation or justification, brutally beat the deceased about the head with some blunt instrument, which could have been a stick of wood, inflicting massive injuries to his brain, causing almost instant death, done while both were drinking, and after the deceased failed to comply with the defendant's demand for repayment of money which the defendant claimed the deceased had previously taken from him.

4. In special ground 1, the defendant excepted to the charge on voluntary manslaughter, where the court charged that "The passion, if any, to be sufficient to reduce to manslaughter, must be aroused by just cause such as would produce the same state of mind on the part of the slayer as would an unjustifiable assault or attempt to commit a serious personal injury upon him. The act must be suddenly committed and must be under the impulse of passion aroused by adequate provocation to reduce a homicide to manslaughter." The exception is based on the ground that the passion does not have

to be aroused by "just cause" or by "adequate provocation." The language complained of is found in *Cyrus* v. *State,* 102 *Ga.* 616, 618 (29 S. E. 917), a unanimous opinion of this court, where this was held to be the law of this State. See also *Murray* v. *State,* 85 *Ga.* 378, 381 (3) (11 S. E. 655), and *Richardson* v. *State,* 189 *Ga.* 448 (1) (5 S. E. 2d 891). There is no merit in this ground.

5. In the second special ground of his motion for new trial, the defendant excepts to the charge that "The law presumes every homicide to be felonious until the contrary appears from circumstances of alleviation or excuse or justification, and it is incumbent upon the defendant to make out, by a preponderance of evidence, such circumstances to the satisfaction of the jury, unless they arise out of the evidence adduced against him by the State." Complaint is made that this portion of the charge is unsound as an abstract principle of law, and is erroneous because the words "or the defendant's statement" did not follow the portion of the charge as given, since "the presumption of felonious intent could be rebutted by the defendant's statement." An excerpt from a charge in substantially the same language as that complained of was approved in *King* v. *State,* 210 *Ga.* 92, 93 (6) (78 S. E. 2d 20); so there is no need to belabor the contention that this is not sound as an abstract principle of law. There is likewise no merit in the contention that the court should have explained to the jury at this point in the instructions that the accused's statement might show circumstances of alleviation, excuse, or justification. Elsewhere in the instructions, the court charged the law (Code § 38-415) regarding the accused's unsworn statement, and it does not appear from the record that the defendant requested that additional instructions on the unsworn statement be given. In *Vaughn* v. *State,* 88 *Ga.* 731 (16 S. E. 64), the accused contended that the court erred in charging that, after the State has proved the fact of the killing by the defendant, the law presumes that the killing was murder, and it then becomes incumbent on the defendant to show to the jury by evidence that it was either justifiable homicide or some grade of homicide below murder. The defendant contended that the instructions excluded from the jury the defendant's statement and restricted the jury to the evidence. There, Chief Justice Bleckley, speaking for the court, said at page 738: "In charging them [the jury] the court

should keep the evidence distinct from the statement and shape the general tenor of the charge by the evidence alone and the law applicable to it. For if the court should mingle evidence and statement together, the jury might find it difficult to separate them and might fail to understand the import of the instructions delivered from the bench. At some stage of the charge the statutory provisions touching the statement ought to be made known to the jury, and this, as has frequently been suggested by this court, is usually enough to say touching the statement. The statute on that subject is so plain and explicit as to need no exposition or comment. If, however, a special request to charge on any matter of defense set up in the statement is made in writing, the request ought to be granted when the charge requested is applicable to the matter of the statement and expressed in appropriate terms." See also *Williams* v. *State,* 170 *Ga.* 886 (2) (154 S. E. 363), and *Booker* v. *State,* 183 *Ga.* 822 (5) (190 S. E. 356).

6. There is no merit in the complaint made in special ground 3 to the following charge: "Gentlemen of the jury, on the theory of justifiable homicide and in connection with the law applicable to that subject, the defendant in this case is to be judged as a reasonably courageous man under the circumstances as they appeared to him, but in order to justify the homicide, there must be something more than a mere threat or menace. There must be an appearance of imminent danger. The means of inflicting the threatening danger, if any, must be apparently at hand at the time, and there must be some manifestation of intention to inflict a felonious injury presently." This charge apparently was taken from *Cumming* v. *State,* 99 *Ga.* 662, 664 (27 S. E. 177), where the principles embodied in the charge were propounded. See also *Morton* v. *State,* 190 *Ga.* 792, 802 (6) (10 S. E. 2d 836).

7. In special ground 4, the complaint is to the charge that, if, "you believe beyond a reasonable doubt that the defendant, Hilton Gardner, killed the person named in the indictment, Hoke Norton, in the manner therein charged, with an instrument that, in the manner in which it was used, was a weapon likely to produce death, and without circumstances of justification or mitigation, under the instructions heretofore given you, then you would be authorized to find the defendant guilty of murder, as charged in the indictment," on the

ground that the indictment did not allege that the deceased was killed with "a weapon likely to produce death." The charge was not harmful to the defendant; for, if it meant anything to the jury, it required the State to prove more than was alleged in the indictment, thereby placing upon the State a greater burden than was required. There is no merit in this ground.

8. Special ground 5 complains of the failure to charge the law of involuntary manslaughter. There was no request for such charge. The ground is without merit, for there is no evidence that the killing was involuntarily committed by the defendant.

9. There is no evidence that the defendant tried to eject the deceased from his house, or that he killed the deceased in an effort to evict him from his house. Accordingly, the court did not err in failing to charge on that subject as contended in special ground 6.

10. The other special grounds have been carefully considered and are held to be without merit.

*Judgment affirmed. All the Justices concur.*

ARGUED MAY 9, 1960—DECIDED JUNE 9, 1960—REHEARING DENIED JUNE 28, 1960.

*J. R. Mills, P. B. Ham, W. B. Mitchell,* for plaintiff in error.
*Hugh Sosebee, Solicitor-General, Eugene Cook, Attorney-General, Rubye G. Jackson, Assistant Attorney-General,* contra.