UNITED STATES v. RICHARDSON and others, Ex'rs.

(*Circuit Court, D. Massachusetts.* January 23, 1882.)

1. CONTRACTS — OFFER TO PAY — "ALL CLAIMS" — EXECUTORS — SURVIVAL OF CAUSES OF ACTION—PENALTIES AND FORFEITURES—DUTIES.

W., an importer, against whom a personal action was pending in the district court of the United States for penalties alleged to have been incurred on account of certain importations of tobacco, made an offer to the government to pay a certain sum on the suit in the district court in settlement of all claims it had against him. The government agreed to settle all the known claims, specifying them, for that sum, requiring immediate payment, and that part of the sum so paid be considered as having been paid for duties, and the remainder only as a penalty. Soon afterwards W. died; before either he had paid the money or the government had tendered him a release. In an action against his executors, in which both parties agree that all suits and causes of action for penalties and forfeitures died with W., and that the right of action for duties survived, it was *held:* (1) that the acceptance conformed to the offer; (2) that as no tender of a release had been made by the government before the death of W., and after that occurred the occasion for a release had passed, the contract was not binding upon the executors.

At Law.

*Geo. P. Sanger,* U. S. Atty., and *Prentiss Cummings,* for the United States.

*Sydney Bartlett* and *Henry D. Hyde,* for defendants.

LOWELL, C. J.    Action of contract.    The first count of the declaration alleges that in May, 1872, a suit for penalties was pending in favor of the United States against Way, the testator of the defendants, in the district court at Boston; that claims were made for penalties and duties in respect to certain importations of tobacco; that the testator offered to pay the plaintiffs $55,000 in settlement of all said claims and causes of action; that upon due report by the district attorney, and upon the recommendation of the solicitor of the treasury, the secretary of the treasury accepted said offer, May 29, 1872; that the acceptance was notified to Way, June 1, 1872, and

was by him thereupon duly ratified and confirmed; that the defendants, as executors of said Way, owe said sum to the plaintiffs. The second and third counts allege a promise to pay $55,000, in consideration of an agreement that the plaintiffs would forbear to sue Way, and that they have so forborne.

The answer sets up four defences:

(1) A denial of the contract. (2) No performance, or offer to perform, by the United States, during Way's life. (3) That in violation of the contract, if any was made, the plaintiffs have sued the defendants for a part of the sums alleged to be due from Way. (4) That after Way's death a compromise was duly made by the plaintiffs with these defendants, as executors, which took the place of the compromise declared on.

The cause was tried by the court. I find the following facts:

An information was filed in the district court here, October 25, 1871, against 1,291 bales of tobacco, imported by the brig Star, for a fraud said to have been attempted by Way in bribing a weigher to make a false return. Way claimed the goods, and received them upon giving bond, with sureties, for $100,000, which was their agreed value. April 1, 1872, a default was entered, and Way was ordered to pay into court, within 20 days, the $100,000 and costs. Several payments were made; the last instalment of the damages May 18, 1872, and the costs May 27, 1872. At this time a personal action was pending by the United States against Way for penalties said to have been incurred in some other importations of tobacco, to the amount of $300,000.

In a letter dated May 8, 1872, Way offered the secretary of the treasury to pay $100,000 in full compromise and settlement of the judgment, and of all fines, penalties, and forfeitures incurred by reason of certain importations of tobacco, enumerated in his letter; also, all duties due on said importations.

The offer having been referred back to Mr. Mason, district attorney, he wrote to the solicitor, May 18th, explaining that the United States had already recovered $100,000 for an attempted fraud, by which they had lost nothing; that the duties due the government were small; but yet that he would not recommend an acceptance of the offer of May 8th; but he did recommend the secretary to accept an offer of $55,000, which he inclosed, in these words: "May 18, 1872. I hereby propose to pay $55,000 on the suit against me in the district court in settlement of all claims of the government against me."

Mason wrote, May 24, 1872, making further explanation of the case, and saying that the gross duties due were about $25,000, but, after allowance for tare, etc., would be about half that sum; and again advising to accept the $55,000. He said, besides, that the proposal to release "all claims" was intended by him to include only the tobacco importations; that he knew of no others, nor could Way have anticipated a settlement of unknown claims. May 27th Mason sent a telegram to the solicitor: "If you accept Way's offer, please make condition immediate payment." May 27th Mr. Banfield, the solicitor, wrote the secretary, referring to both offers, and advising him to accept the second, "with the proviso that the matter be submitted to the proper

officer for an estimate of the duties withheld upon the several lots of tobacco involved, and that these be paid into the treasury and the balance to be treated as a penalty." May 28th the secretary wrote the solicitor: "I have received your communication of the twenty-seventh instant, returning the proposal of Mr. Samuel A. Way, of Boston, to pay one hundred and fifty-five thousand dollars, ($155,000,) as a settlement of all claims of the United States in consequence of the illegal importation of a quantity of tobacco at Boston, in the vessels and at the times designated below." Then follows a list, as in Way's letter of May 8th, and a statement of the facts showing the propriety of the settlement, adding: "In consideration of those facts, and the recommendations by yourself, the United States district attorney, and the collector of customs at Boston, respectively, in favor of the settlement, I have concluded to compromise the claims on the basis proposed, and you are requested to instruct the district attorney accordingly." He directs that the duties due the United States shall be deducted by the collector of customs, and the residue of the sums received should be treated as the proceeds of fines, penalties, and forfeitures. In calling the offer $155,000, the secretary included the $100,000 already paid.

May 29, 1872, the solicitor inclosed a copy of this letter to Mr. Mason, and instructed him to cause the compromise to be carried out in the manner therein indicated; "the money to be paid at once, and the duties remaining due on the several importations to be estimated by the collector of customs, and deducted and paid into the treasury as duties, the balance to be treated as a penalty, etc. Please report to this office upon settlement being made as directed."

These letters were received by the district attorney on Saturday June 1, 1872, and Way was overheard discussing or disputing with him, on that day, about terms of payment, from which I infer that the letter of the secretary, or its substance, had been communicated to him. I do not find, in the terms of the declaration, that the acceptance was by him thereupon duly ratified and confirmed. I do not know whether it was confirmed or not.

Way attended to no business after that Saturday. He was taken ill on Sunday and died on Tuesday. Mr. Mason died during the next year.

The defendants, as executors of Way, made several written offers to the secretary. January 31, 1873, they offered to pay $11,000 in gold, in full settlement and compromise of all suits, claims, dues, duties, penalties, and demands of the United States against Way or his estate, heirs, or executors. This offer was referred to Mr. Hurd, assistant district attorney, and, while he was considering it, a fresh offer was made to him and transmitted with his report, and he advised its acceptance. His report was elaborate, expressing the opinion that the suit for $300,000 penalties had abated by the death of Way; that the court would not be likely to enter judgment for $55,000 *nunc pro tunc*, in that suit, because it would be a great hardship to enforce such an agreement made under circumstances of excitement, etc.; that no action could be maintained on the compromise as a contract. The offer which he approved was to enter judgment for the United States, in the pending suit, for the sum of $13,500. The solicitor answered, February 17, 1873, that the secretary rejected this offer; that the $13,500 was the estimated amount of

duties, and should not be recovered as a penalty; and, besides, that he desired the question of the liability of the estate of Mr. Way for the $55,000 offered by him, and accepted by the government before his death, should be tested and disposed of by a judicial determination.

There the affair rested for some time, one of the executors of Way having become secretary of the treasury.

October 5, 1874, Mr. Hyde, attorney for the executors, wrote a letter, dated at Washington, to Mr. Bristow, then secretary of the treasury, reciting briefly the history of the case as shown by the papers on file, and offering to pay, in settlement of the pending suit, (though claiming that it had, technically speaking, abated,) such sum as should be found due to the United States for duties by a master, or auditor, to be appointed by the court. October 8, 1874, Mr. Wilson, then solicitor of the treasury, in a report to the secretary upon this offer, recommended its acceptance on the ground that the suits and claims for penalties had died with Way, and that the compromise might probably have gone too, but if not, it would be harsh and unconscionable to exact the $55,000, under all the circumstances. October 13, 1874, he notified the district attorney, Mr. Sanger, of this offer, and that the secretary had accepted it, and asked Mr. Sanger to name some suitable person as master or auditor. Mr. Sanger named Mr Bassett, deputy clerk of the district court, and he was agreed on, and the court, at the request of both parties, made the order of reference. Mr. Bassett had one or more hearings in the case, but some disagreements arose between the parties, and the government declined to proceed further, and brought a suit for the duties, and this suit for the $55,000. The action and order of reference are still open on the docket.

The pleadings in the present action, and the several letters above mentioned, are made a part of this statement of facts.

It has been discovered, since Way's death, that he owed the government about $300 for an inadequate payment caused by a mistake of the officers of the customs in respect to an importation of veneers.

Upon these facts the defendants contend that the acceptance did not conform to the offer, and as there is no sufficient evidence that Way consented to a change, the agreement was not complete. The variations were that the government agreed to release, specifically, all the known claims, instead of "all claims;" that it required immediate payment; and that a part of the sum paid be considered as having been paid for duties, and the remainder only as a penalty. These variations do not seem to me material, or rather to be variations. "All claims" must be construed to mean known claims, else the agreement might be a mere leap in the dark. An offer to pay, without more, means cash. With the mode in which the sums paid should be divided, the defendant had no concern.

Both parties agree that all suits and causes of action for penalties and forfeitures died with Way, and that the right of action for duties survived.

The contract, then, was complete. In substance, it was that if the defendant would pay $55,000, immediately, the government would release him from all known claims. It was not a contract by which, in consideration of his promise to pay, they released him, or even promised to release him; or to forbear to sue him or his executors. If he had retracted his consent on Monday, they would have prosecuted their suits for penalties as well as duties. They did not intend to release those suits and claims, which, if he had lived, would have been their best security. Still, it was a contract; and if Way had immediately tendered the money to the government, he might have pleaded the contract and tender in bar of the suit or suits; and, on the other hand, if the government had chosen to tender to Way a release of all claims, I do not see why they might not have sued him on the contract. They made no such tender then, or since, and when Way died the occasion for a release was gone; there was no longer a large unliquidated claim to be relieved by the payment. In this state of things I decide that there was no contract binding the executors to pay $55,000 to the government.

As to the second compromise, the objection is taken by the government that there was no report upon it by the district attorney, as required by the statute, (now Rev. St. § 3469.) But there was a full and elaborate report and recommendation by Mr. Hurd upon a similar offer; and it is upon this report that the solicitor founded his own. This is plain upon the face of the papers. The offer thus reported on was not only similar, but, in substance, identical. It was to submit to a judgment for $13,500, the estimated amount of duties; and the accepted offer was to submit to a judgment for the amount of the same duties, to be ascertained by an auditor. There had been, therefore, a substantial compliance with the statute. Whether the new compromise was one which, in law, would have superseded the old one, if that had been of binding force after Way's death, I have no occasion to decide. Judgment for the defendants.