**COMMITTEE TO PRESERVE AMERICAN COLOR TELEVISION (a.k.a. Compact) and Imports Committee, Tube Division, Electronic Industries Association, Plaintiffs,**

v.

**UNITED STATES, Defendant.**

**Court No. 81–3–00258.**

United States Court of International Trade.

Nov. 18, 1981.

Collier, Shannon, Rill & Scott, Washington, D. C. (Paul D. Cullen and Robert L. Meuser, Washington, D. C., on the briefs), for plaintiffs.

J. Paul McGrath, Asst. Atty. Gen. (David M. Cohen, Washington, D. C., Director, Commercial Litigation Branch, on the briefs), for defendant.

MALETZ, Judge:

Plaintiffs, representing members of the United States television industry and its workers, challenge as unlawful certain settlement agreements into which the United States had entered on April 28, 1980 with various importers of television sets from Japan. As a first cause of action, the complaint alleges that the settlement was not authorized by statute. Alternatively, as a second and third cause of action, the complaint alleges that even assuming the existence of statutory authority for the settlement, the Government officials who recommended and determined that the claims should be settled acted arbitrarily, capriciously, in bad faith and unlawfully. It is undisputed that by virtue of 28 U.S.C. § 1581(i)—which was provided for by the Customs Courts Act of 1980 (94 Stat. 1729) —this court has jurisdiction to entertain the action.

Plaintiffs have moved for partial summary judgment on their first cause of action and defendant has cross-moved for partial summary judgment on that cause of action.

The case arises as follows: On March 10, 1971, the Secretary of the Treasury issued a finding of dumping of television sets from Japan, thereby making such sets subject to

antidumping duties.[1] T.D. 71–76, 36 Fed. Reg. 4597 (1971). From the date of this finding through 1979, most of these duties were not collected. On March 28, 1980, the Secretary of Commerce[2] announced an administrative review of the dumping finding (45 Fed.Reg. 20511), as required by section 751 of the Tariff Act of 1930, as added by the Trade Agreements Act of 1979 (19 U.S.C. § 1675).[3] On April 28, 1980, prior to the completion of this administrative review, the Secretary of Commerce settled all claims for antidumping duties arising from entries of the sets from July 1, 1973 to March 31, 1979. Plaintiffs then filed this action challenging the lawfulness of this settlement.

 We now consider plaintiffs' motion for partial summary judgment on their first cause of action.[4] Specifically, plaintiffs contend that the settlement is not authorized by section 617 of the Tariff Act of 1930, as amended (19 U.S.C. § 1617) and is therefore *ultra vires*, illegal and void. Section 617 reads as follows:

Upon a report by a customs officer, United States attorney, or any special attorney, having charge of *any claim arising under the customs laws*, showing the facts upon which such claim is based, the probabilities of a recovery and the terms upon which the same may be compromised, the Secretary of the Treasury is authorized to compromise such claim, if such action shall be recommended by the General Counsel for the Department of the Treasury. [Emphasis added.][5]

Thus section 617, by its terms, authorizes the relevant Government officials to compromise "any claim arising under the customs laws . . . ." There is no doubt that a claim for dumping duties is a "claim arising under the customs laws." And since the agreements at issue compromised claims for dumping duties, it is clear that the plain language of section 617 authorized the Secretary of Commerce to enter into the agreements.[6]

---

1. The Secretary of the Treasury's dumping finding was made pursuant to section 201(a) of the Antidumping Act of 1921, as amended (19 U.S.C. § 160(a)), an enactment which was repealed by the Trade Agreements Act of 1979, Pub.L.No.96–39, Title I, § 106(a), 93 Stat. 193. However, pursuant to section 106(a) of the Trade Agreements Act of 1979, this dumping finding remained in effect.

2. The Secretary of the Treasury's responsibility to administer antidumping matters has been transferred to the Secretary of Commerce by Reorg. Plan No. 3 of 1979, § 5(a)(1)(C), 44 Fed.Reg. 69273 (1979).

3. Section 751 requires the Secretary to conduct a periodic review and determination of antidumping duties.

4. Prior to the April 28, 1980 settlement agreements, plaintiffs herein had filed a civil action in the U. S. District Court for the District of Columbia challenging the alleged protracted refusal of the Government to enforce the dumping finding of March 10, 1971. *COMPACT, et al. v. Blumenthal*, C.A. 79–1207 (D.D.C.1979), *appeal pending, sub. nom., COMPACT, et al. v. Miller*, No. 79–1948 (D.C.Cir.). The District Court dismissed the action for lack of jurisdiction. At the time the April 28, 1980 settlement agreements were executed, plaintiffs' case was pending before the U. S. Court of Appeals for the District of Columbia Circuit on the jurisdictional issue presented by the District Court's dismissal of the action. On May 9, 1980 the Court of Appeals enjoined the implementation of the settlement agreements pending appeal. After enactment on October 10, 1980 of the Customs Courts Act of 1980, the Court of Appeals, on February 5, 1981, granted plaintiffs' motion to stay proceedings pending the filing of a new complaint in this court and a determination by this court of its jurisdiction over the controversy.

Previously in the related case of *Zenith Radio Corp. v. United States* in this court, the court issued a preliminary injunction restraining the implementation of the April 28, 1980 settlement agreements on the ground that *Zenith* had made out a substantial case on the merits on its alternative second cause of action alleging that Government officials in negotiating and executing the agreements acted arbitrarily and in bad faith. See *Zenith Radio Corp. v. United States*, 1 CIT ——, 505 F.Supp. 216 (1980).

5. The Secretary of the Treasury's functions under section 617 have been transferred to the Secretary of Commerce, insofar as those functions relate to the settlement of claims for antidumping duties. Reorg. Plan No. 3 of 1979, *supra*, § 5(a)(1)(G).

6. In the related *Zenith* case, plaintiff moved for partial summary judgment on its first cause of action contending, among other things, that section 617 only authorized the settlement of

Notwithstanding this plain language, plaintiffs argue that the authority to compromise "claims" contained in section 617 is limited to the authority to compromise claims for fines, penalties and forfeitures and that since antidumping duties are not penal in nature, they may not be compromised. More particularly, plaintiffs contend that the scope of the authority of section 617 has been obscured by various recodifications of that provision since its first enactment in 1922. According to plaintiffs, while the language of section 617 is broad, a reading of that provision in its original setting establishes that it was intended only to authorize the compromise of claims for fines, penalties and forfeitures.

Continuing, plaintiffs point out that section 617 of the Tariff Act of 1922, 42 Stat. 987, was preceded and followed by sections 616 and 618 which dealt exclusively with the remission and mitigation of fines, penalties and forfeitures. Section 616, as it appeared in the Tariff Act of 1922, prohibited an officer of the United States from compromising any claim of the United States under the customs laws for any fine, penalty or forfeiture. That section contained a proviso, however, which specified that "the Secretary of the Treasury shall have the power to remit or mitigate any such fine, penalty or forfeiture or to compromise the same *in the manner provided by law.*" [Emphasis added.]

Section 617 provided authority to the Secretary to compromise claims "under the customs laws." Finally, section 618 provided authority to the Secretary to remit or mitigate a fine, penalty or forfeiture.[7]

---

*liquidated claims* for antidumping duties. This court rejected that contention holding that the word "claim" as used in section 617 is a broad comprehensive word which covers both liquidated and unliquidated claims. *Zenith Radio Corp. v. United States,* 1 CIT ——, 509 F.Supp. 1282 (1981).

7. Sections 616, 617 and 618 as they appeared in the Tariff Act of 1922 (42 Stat. 987) provided:

SEC. 616. COMPROMISE OF CLAIMS.—It shall not be lawful for any officer of the United States to compromise or abate any claim of the United States arising under the customs laws for any fine, penalty, or forfeiture, and any officer who compromises or abates any such claim or attempts to make such compromise or abatement, or in any manner relieves or attempts to relieve any persons, vessel, vehicle, merchandise, or baggage from any such fine, penalty, or forfeiture shall be guilty of a felony and upon conviction thereof shall be punished by a fine of not more than $5,000 or by imprisonment for a term of not exceeding two years: *Provided,* That the Secretary of the Treasury shall have power to remit or mitigate any such fine, penalty, or forfeiture, or to compromise the same in the manner provided by law.

SEC. 617. SAME.—Upon a report by a collector, district attorney, or any special attorney or agent, having charge of any claim arising under the customs laws, showing the facts upon which such claim is based, the probabilities of a recovery and the terms upon which the same may be compromised, the Secretary of the Treasury is hereby authorized to compromise such claim, if such action shall be recommended by the Solicitor of the Treasury.

SEC. 618. REMISSION OR MITIGATION OF PENALTIES.—Whenever any person interested in any vessel, vehicle, merchandise, or baggage seized under the provisions of this Act, or who has incurred, or is alleged to have incurred, any fine or penalty thereunder, files with the Secretary of the Treasury if under the customs laws, and with the Secretary of Commerce if under the navigation laws, before the sale of such vessel, vehicle, merchandise, or baggage a petition for the remission or mitigation of such fine, penalty, or forfeiture, the Secretary of the Treasury, or the Secretary of Commerce, if he finds that such fine, penalty, or forfeiture was incurred without willful negligence or without any intention on the part of the petitioner to defraud the revenue or to violate the law, or finds the existence of such mitigating circumstances as to justify the remission or mitigation of such fine, penalty, or forfeiture, may remit or mitigate the same upon such terms and conditions as he deems reasonable and just, or order discontinuance of any prosecution relating thereto. In order to enable him to ascertain the facts, the Secretary of the Treasury may issue a commission to any special agent, collector, member of the Board of United States General Appraisers, or United States commissioner, to take testimony upon such petition: *Provided,* That nothing in this section shall be construed to deprive any person of an award of compensation made before the filing of such petition.

In 1930, these three sections were recodified as sections 616–618 of the Tariff Act of 1930, 46 Stat. 757. In 1948, section 616 was repealed; however, the substance of that provision is contained in 18 U.S.C. § 1915, 62 Stat. 793. The final amendment to section 617 occurred in

Since section 616 states that the Secretary may remit, mitigate or compromise claims for fines, penalties and forfeitures "in the manner provided by law," and since section 618 provided authority to remit or mitigate fines, penalties or forfeitures, plaintiffs argue that it necessarily follows that the authority to compromise "claims" contained in section 617 is limited to the compromise of those claims referred to in section 616, *i. e.*, claims for fines, penalties or forfeitures. In other words, plaintiffs' contention is that the language of section 617 is inextricably linked to the language of section 616 which is clearly limited in its scope to the remission, mitigation and compromise of fines, penalties and forfeitures.

But this contention is not supported by the language or the historical context of the sections or by their contemporaneous administrative construction.

Sections 616 and 617 were enacted into law at the same time in 1922 by the 67th Congress. In section 616, Congress utilized the phrase "claim of the United States arising under the customs laws *for any fine,*

*penalty or forfeiture.*" [Emphasis added.] In contrast, in section 617, the same Congress utilized the phrase "any claim arising under the customs laws" and omitted the phrase "for any fine, penalty or forfeiture." If the same Congress which limited section 616 to claims for fines, penalties and forfeitures had wished to so limit section 617, it seems clear that Congress would have included the same limiting language in both sections 616 and 617. Considering that the same Congress enacted both sections and that that Congress limited section 616 by the use of a particular phrase, the failure to include that same phrase in section 617 can only mean that section 617, unlike section 616, is not limited in scope.

Moreover, plaintiffs' contention concerning the link between sections 616, 617 and 618 depends solely upon the premise that those sections possessed a common origin in the Tariff Act of 1922. However, this premise is incorrect. The fact is that sections 616 and 618 originated in sections 17, 18, 19 and 20 of the Act of June 22, 1874, 18 Stat. 189.[8] On the other hand, section 617

1970, substituting a reference to a customs officer for a reference to a collector. 84 Stat. 291.

**8.** Those sections provided:

SEC. 17. That whenever, for an alleged violation of the customs revenue laws, any person who shall be charged with having incurred any fine, penalty, forfeiture, or disability other than imprisonment, or shall be interested in any vessel or merchandise seized or subject to seizure, when the appraised value of such vessel or merchandise is not less than one thousand dollars, shall present his petition to the judge of the district in which the alleged violation occurred, or in which the property is situated, setting forth, truly and particularly, the facts and circumstances of the case, and praying for relief, such judge shall, if the case, in his judgment, requires, proceed to inquire, in a summary manner into the circumstances of the case, at such reasonable time as may be fixed by him for that purpose, of which the district attorney and the collector shall be notified by the petitioner, in order that they may attend and show cause why the petition should be refused.

SEC. 18. That the summary investigation hereby provided for may be held before the judge to whom the petition is presented, or, if he shall so direct, before any United States

commissioner for such district, and the facts appearing thereon shall be stated and annexed to the petition, and, together with a certified copy of the evidence, transmitted to the Secretary of the Treasury, who shall thereupon have power to mitigate or remit such fine, penalty, or forfeiture, or remove such disability, or any part thereof, if, in his opinion, the same shall have been incurred without willful negligence or any intention of fraud in the person or persons incurring the same, and to direct the prosecution, if any shall have been instituted for the recovery thereof, to cease and be discontinued upon such terms or conditions as he may deem reasonable and just.

SEC. 19. That it shall not be lawful for any officer or officers of the United States to compromise or abate any claim of the United States arising under the customs laws, for any fine, penalty, or forfeiture incurred by a violation thereof; and any officer or person who shall so compromise or abate any such claim, or attempt to make such compromise or abatement, or in any manner relieve or attempt to relieve from such fine, penalty, or forfeiture, shall be deemed guilty of a felony, and, on conviction thereof, shall suffer imprisonment not exceeding ten years, and be fined not exceeding ten thousand dollars: *Provided, however,* That the Secretary of the

possessed no apparent predecessor prior to the Tariff Act of 1922.

This conclusion that sections 17, 18, 19 and 20 were the predecessors of sections 616 and 618 is demonstrated by a simple comparison of those sections with the terms of sections 616 and 618. Thus a comparison of section 19 of the 1874 Act with section 616 leaves no doubt that section 19 was the predecessor of section 616. Except for stylistic differences and an alteration of the penalty imposed by each section, the terms of the two sections are identical.

A similar comparison of sections 17, 18 and 20 shows that these sections were the predecessors of section 618, not section 617. Section 17 authorized a party to file a petition for the mitigation or remission of a fine, penalty or forfeiture with a district judge. Pursuant to the same section, the judge or a United States commissioner was to conduct a summary inquiry into the facts. Pursuant to section 18, the report of the judge or commissioner was to be forwarded to the Secretary of the Treasury.

At the same time, section 20 required the relevant district attorney and collector of customs to forward information in their possession concerning the petition to the Secretary.

Upon receipt of the report and the information, section 18 authorized the Secretary to "mitigate or remit" the fine, penalty or forfeiture if, in the Secretary's opinion, the fine, penalty or forfeiture had been incurred "without willful negligence or intention of fraud."

It is clear from this brief review of sections 17, 18 and 20 that the sections did not refer to the authority to "compromise" claims as does section 617.

In addition, it is clear that section 18 was the most important section in that it con-

tained the relevant grant of authority. Sections 17 and 20 merely established a procedure for the exercise of that authority.

Moreover, a comparison of section 18 and section 618 leaves no doubt but that the former is the predecessor of the latter. The operative language of the two sections is virtually identical.

In short, the only real change made in sections 17, 18 and 20 by the Tariff Act of 1922 was the elimination of the procedural requirement involving a judicial inquiry into the facts. The decision which the Secretary was authorized to render was nearly identical in both statutes.

In these circumstances, it is apparent that sections 17, 18, 19 and 20 were the predecessors of sections 616 and 618 and not, as plaintiffs state, section 617. Sections 17, 18, 19 and 20 were not preceded, followed or separated by a provision even similar to section 617 in the Act of June 22, 1874. Thus, the juxtaposition of sections 616, 617 and 618 in the Tariff Act of 1922 in no way indicates that section 617 was inextricably linked with sections 616 and 618.

This conclusion is further supported by the historical context of section 617. At the time section 617 was enacted into law, R.S. 3469 was in effect. That statute provided:

> SEC. 3469. Upon a report by a district attorney, or any special attorney or agent having charge of any claim in favor of the United States, showing in detail the condition of such claim, and the terms upon which the same may be compromised, and recommending that it be compromised upon the terms so offered, and upon the recommendation of the Solicitor of the Treasury, the Secretary of the Treasury is authorized to compromise such claim accordingly. But the provi-

> Treasury shall have power to remit any fines, penalties, or forfeitures, or to compromise the same, in accordance with existing law.
> SEC. 20. That whenever any application shall be made to the Secretary of the Treasury for the mitigation or remission of any fine, penalty, or forfeiture, or the refund of any duties, in case the amount involved is not less than one thousand dollars, the applicant

> shall notify the district attorney and the collector of customs of the district in which the duties, fine, penalty, or forfeiture accrued; and it shall be the duty of such collector and district attorney to furnish to the Secretary of the Treasury all practicable information necessary to enable him to protect the interests of the United States.

sions of this section shall not apply to any claim arising under the postal laws.

With respect to R.S. 3469, various Attorneys General had expressed the opinion that that provision authorized the Secretary of the Treasury to compromise claims for fines, penalties and forfeitures if the decision to compromise was based solely upon collectibility and not hardship. E. g., 16 Op.Att'y Gen. 259 (1879); 29 Op.Att'y Gen. 149, 155 (1911); 36 Op.Att'y Gen. 40 (1929).[9] Indeed, in *United States v. Richardson*, 9 Fed. 804 (D.Mass.1882), the court noted, without deciding the matter, that the Secretary of the Treasury had in 1872 utilized the authority contained in R.S. 3469 to compromise claims for fines, penalties and forfeitures.

R.S. 3469 was in effect before and after the Tariff Act of 1922. In fact, R.S. 3469 became 31 U.S.C. § 194 (1976) and remained in effect until 1978 when it was repealed by the Bankruptcy Reform Act. 92 Stat. 2680.

Given the fact that R.S. 3469 was in effect prior and subsequent to the Tariff Act of 1922 and the fact that R.S. 3469 had been utilized to compromise claims for fines, penalties and forfeitures arising under the customs laws, it is evident that the phrase "in the manner provided by law" which is contained in the proviso in section 616 [10] need not and does not refer only to the authority to compromise claims contained in section 617. Indeed, the phrase "in the manner provided by law" contained in section 616, when it refers to the authority to compromise, does not refer solely to section 617. The phrase, as it applies to compromise authority, could and did apply equally to either R.S. 3469 or section 617 or both.

There is the further consideration that in addition to claims for fines, penalties and forfeitures, R.S. 3469 authorized the Secretary of the Treasury to compromise claims in favor of the United States for customs duties provided that the conditions specified in that section were followed. See *United States v. Richardson, supra.*

R.S. 3469, as previously indicated, remained in effect until 1978 when it was repealed by the Bankruptcy Reform Act. As explained by the Reports of the House and Senate Committees on the Judiciary, the purpose of the repealing provision was to "repeal deadwood." H.R.Rep.No.95–595, 95th Cong., 1st Sess. 456 (1977); S.Rep.No. 95–989, 95th Cong., 2d Sess. 164 (1978), U.S. Code Cong. & Admin.News 1978, p. 5787. When it is considered that R.S. 3469 provided authority to the Secretary to compromise claims in favor of the United States for customs duties and that R.S. 3469 was repealed as "deadwood," it would seem inconceivable that Congress intended thereby to limit the Secretary's authority under section 617 to the authority to compromise only claims for fines, penalties and forfeitures. Rather, the repeal of R.S. 3469 as "deadwood" would seem recognition by Congress that section 617 already provided broad authority for the Secretary to compromise "any claim" under the customs laws and that to that extent R.S. 3469 was therefore redundant.

Plaintiffs further rely on the Report of the Committee on Ways and Means of the House of Representatives on the bill which became the Tariff Act of 1922. That Report, which refers in general terms to the portion of the bill, Part V, in which sections 616, 617 and 618 appeared, states (H.R.Rep. No.248, 67th Cong., 1st Sess. at 26 (1921)):

> The laws for the protection of the revenue and imposing fines, penalties and forfeitures for violation of the customs laws have been assembled in Part V. . . .

---

9. In contrast, the Attorneys General also concluded that in cases where considerations of hardship were involved, a compromise of claims for fines, penalties and forfeitures was not permissible under R.S. 3469 but could be resolved by the Secretary's utilization of his power to "remit or mitigate." *Ibid.*

10. As previously indicated, note 7, *supra*, the proviso contained in section 616 stated:

> *Provided*, That the Secretary of the Treasury shall have power to remit or mitigate any such fine, penalty or forfeiture, or to compromise the same in the manner provided by law.

Plaintiffs contend that because this statement refers to laws imposing fines, penalties and forfeitures, it follows that section 617 applies only to claims for fines, penalties and forfeitures. This conclusion is not logical.

The phrase contained in the House Report upon which plaintiffs rely also refers to the fact that Part V of the legislation contained laws for "the protection of the revenue" as well as laws which pertained to fines, penalties and forfeitures. The Report does not explain which sections contained in Part V of the legislation related to laws for the protection of the revenue and which sections related to the laws pertaining to fines, penalties and forfeitures. Thus, the Report could be interpreted as explaining that sections 616 and 618 relate to laws pertaining to fines, penalties and forfeitures and that section 617 relates to laws providing for the protection of the revenue.

In fact, this latter interpretation of the Report seems more reasonable than plaintiffs' interpretation. This conclusion results from the fact that the statutory language utilized in section 617 refers to any claim arising under the customs laws and does not contain language, as does section 616, which limits the section to claims for fines, penalties and forfeitures. This interpretation of the Report accords with the actual language of section 617 and gives meaning to the entire quoted portion of the Report, including the phrase "laws for the protection of the revenue," whereas plaintiffs' interpretation of the Report ignores that phrase entirely.

Plaintiffs next turn to the headings of sections 616 and 617 and attempt to again conclude that these headings demonstrate the fact that the authority contained in section 617 is, contrary to its terms, limited to claims for fines, penalties and forfeitures.

■ Of course, the headings of statutes may be utilized to interpret a statute, if at all, only where the statute is ambiguous. E. g., *Russ v. Wilkens*, 624 F.2d 914, 922 (9th Cir. 1980); *Motor Coach Industries,*

*Inc. v. United States,* 536 F.2d 930, 936 (Ct.Cl.1976); *Tibke v. Immigration and Naturalization Service,* 335 F.2d 42, 45 (2d Cir. 1964). However, section 617 is not ambiguous. Thus, no resort to the section headings is necessary.

In any event, plaintiffs' conclusion is without merit. The heading of section 616 reads "Compromise of Claims." The heading of section 617 reads "Same." Since section 616 is limited to claims for fines, penalties and forfeitures, plaintiffs conclude that the term "Claims," as utilized in the heading to section 616, must be interpreted as referring only to claims for fines, penalties and forfeitures. Plaintiffs then contend that, since the heading to section 617 reads "Same," that heading must be interpreted in the same manner as the heading to section 616, *i. e.,* as if it referred only to claims for fines, penalties or forfeitures. Finally, plaintiffs state that the term "claim," as contained in the text of section 617, must be interpreted in the same manner as the heading.

Plaintiffs' interpretation is not reasonable. The heading of section 616 reads: "Compromise of Claims." The heading of section 617 reads "Same." Both headings thus refer to the generic term "claims" which is much broader than claims for fines, penalties and forfeitures. Accordingly, the headings reasonably interpreted mean that both sections 616 and 617 apply to the compromise of all types of claims unless the actual language of the section, as in the case of section 616, contains language which limits the term.

The conclusion that section 617 is not limited to the authority to compromise claims relating to fines, penalties and forfeitures is also supported by an opinion of the Attorney General. 35 Op.Att'y Gen. 15 (1925). In 1925, shortly after the enactment of the Tariff Act of 1922, the Secretary of the Treasury requested an opinion from the Attorney General as to the authority which could be delegated to the Director of Customs. In the course of his opinion, the Attorney General twice referred to sections 617 and 618. In the first

reference, the Attorney General described the authority contained in those sections as follows (*id.* at 18):

> By section 617 the Secretary is authorized to compromise, under certain conditions, *any claim* arising under the customs law, if such action shall be recommended by the Solicitor of the Treasury, and by section 618 he is authorized to *remit or mitigate fines or penalties* upon such terms and conditions as he deems reasonable and just. [Emphasis added.]

In the second reference (*id.* at 21), the Attorney General noted:

> ... I think the provisions of sections 616, 617, and 618 of the Tariff Act of September 21, 1922, relating to the *compromise of claims and the abatement of fines, penalties and forfeitures* require the personal action of the Secretary. [Emphasis added.]

This opinion of the Attorney General clearly shows that the nearly contemporaneous interpretation of the Tariff Act of 1922 was that section 617 was not limited to "abatement" of fines, penalties and forfeitures, but contained authority to compromise "all claims." [11]

Additionally, plaintiffs refer to the general principle of statutory construction that the courts will read the text of a statute in the light of its context and will interpret the text so as to carry out the legislative intent. In particular, plaintiffs rely on *Elizabeth Arden Sales Corporation v. Gus Blass Co.*, 150 F.2d 988 (8th Cir. 1945). That case involved a treble damage action under sections 2(d) and (e) of the Clayton Act as amended by the Robinson-Patman Act. Subsections (a), (b), (c), (d) and (f) of section 2 regulated a variety of acts and practices by any person "engaged in commerce." Subsection (e) did not contain this qualification, "engaged in commerce," and

the defendant contended that section 2(e) was therefore unconstitutional because it represented an unlawful exercise of authority by the federal Government over intrastate commerce. The court decided that the words "engaged in commerce" should be read into subsection (e) in order to give that provision its intended meaning. 150 F.2d at 992–993. According to the plaintiffs here, just as the court read the qualifying phrase "engaged in commerce" into the provision in question because it appeared in related provisions, so too this court should read the phrase "fines, penalties and forfeitures" into section 617. This interpretation, plaintiffs assert, will then harmonize the meaning of section 617 with its companion provisions in sections 616 and 618.

The difficulty though is that sections 616, 617 and 618 do not form a statutory whole in the same manner as subsections (a), (b), (c), (d) and (e) of the Robinson-Patman Act. Unlike those provisions, an interpretation of section 617, in accordance with its plain meaning, would not defeat the purpose of the entire statute nor would it defeat any legislative purpose. More importantly, had the court in *Elizabeth Arden* adopted the construction of the statute urged by defendant, it would have placed the constitutionality of that statute in doubt. Thus the court construed the enactment in accordance with the basic principle that if possible a statute should be so construed as to avoid a question as to its constitutionality.

Plaintiffs next argue that the execution of the settlement agreements violated the legally protected interests of the plaintiffs to an administrative determination of antidumping duties under section 751 of the Tariff Act of 1930, as added by the Trade Agreements Act of 1979 (19 U.S.C. § 1675) and thus deprived them of a property inter-

---

11. Plaintiffs also contend that the use of section 617 to compromise claims for dumping duties is inconsistent with a longstanding administrative practice. Plaintiffs state that they have not been able to uncover a single instance during the six decades since enactment of section 617 where the Secretary of the Treasury asserted authority under that section to com- promise anything except fines, penalties and forfeitures. In fact, very little recorded history of the use of the authority contained in section 617 is in existence. And even if such a practice did exist—which is questionable—at most it is entitled to considerable weight, but is scarcely dispositive.

est without a hearing in violation of the Due Process Clause.

In order to determine whether there has been a violation of the Due Process Clause, it is first necessary to determine whether a claimant has been deprived of a "property" interest. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). This property interest must possess a source "outside" of the Constitution. *Ibid.*

In the *Zenith* case, this court held that section 617 and section 751 are separate and distinct statutes. *Zenith Radio Corp. v. United States*, 509 F.Supp. at 1287–1288. That being the case, any property interest which plaintiffs acquired under section 751 was subject to an exercise of the authority contained in section 617. That is to say that even assuming a property interest was acquired under section 751 it was a contingent one since it remained subject to an exercise of the authority under section 617. Since section 617, by its terms, does not require the Secretary to grant a hearing to plaintiffs prior to an exercise of the authority contained in that section, it follows that any property interest which plaintiffs acquired under section 751 was, by its nature, subject to determination without hearing by means of exercise of the authority contained in section 617.

Finally, plaintiffs contend that the execution of the settlement agreements cannot be reconciled with the provisions of section 751 of the Tariff Act of 1930, as added by the Trade Agreements Act of 1979 (19 U.S.C. § 1675). A similar contention was rejected in *Zenith*, 509 F.Supp. at 1286–1288—and is rejected here. As the court stated in *Zenith, id.* at 1287, "no ... repugnancy exists here [between sections 617 and 751] since the two provisions reflect different Congressional concerns and apply to different functions of the Secretary."

For the foregoing reasons, plaintiffs' motion for partial summary judgment on their first cause of action is denied and defendant's cross-motion on that cause of action is granted.